Lauriat, Peter M., J.
These consolidated cases arise out of the refusal of defendant Philadelphia Indemnity Insurance Company (“PIIC” or “defendant”) to provide a full defense and indemnification to plaintiffs Cadete Enterprises, Inc. and John Cadete (collectively, “Cadete”) and plaintiffs Dean Serpa Co. Inc. and Din-art Serpa (collectively, “Serpa”) (collectively, the “plaintiffs”). Now before the court are the parties’ cross motions for summary judgment, limited to the purely legal question of whether PIIC has a duty to defend and indemnify. For reasons that will be explained, the defendants’ motions are allowed, and the plaintiffs’ motions are denied.
BACKGROUND
The following facts, taken from the record, are largely undisputed. Plaintiffs Cadete and Serpa own and operate a number of Dunkin’ Donuts stores in Massachusetts. During the relevant period, the plaintiffs allowed employees with managerial responsibilities to share in the wait staff tip pools. On November 22, 2011, an employee filed a putative class action against Serpa in Essex Superior Court alleging violations of the Massachusetts Tips Statute, G.L.c. 149, § 152A (the “Myers Complaint”). On February 14,2011, four former employees filed a putative class action in the Business Litigation Session of Suffolk Superior Court against Cadete, making the same allegations as the Myers Complaint (the “Enemark Complaint”) (collectively, the “underlying lawsuits”). Both actions allege a single count for violation of the Tips Act. The complaints seek, among other things, restitution for all portions of tips or gratuities to which the wait staff are lawfully entitled.
Cadete bought an employment practices liability insurance policy from PIIC which covers claims against it and any of its officers, directors, trustees or employees during the period April 1, 2010 to April 1, 2011. The Cadete Policy provided aggregate insurance of $1,000,000 for each claim and $3,000,000 for each policy period. Serpa bought an essentially identical policy that covered the same policy period and provided the same amount of coverage. The court will refer to both policies collectively as the “Policies.”
The Policies state, in pertinent part, that PIIC will pay “on behalf of the Insured, Loss from Claims made against the Insured ... for an Employment Practice Act.” The Policies define an Employment Practice Act as any actual or alleged:
*182 1. wrongful dismissal, discharge or termination of employment;
2. breach of a written or oral employment contract or implied employment contract;
3. employment related misrepresentation;
4 wrongful failure to promote;
5. violation of employment discrimination laws (including harassment);
6. wrongful deprivation of a career opportunity;
7. employment related wrongful discipline;
8. negligent employee evaluation;
9. employment related invasion of privacy;
10. employment related defamation (including libel and slander);
11. sexual or workplace harassment of any kind;
12. constructive discharge of employment;
13. employment related retaliation;
14. employment related humiliation;
15. wrongful demotion;
16. negligent reassignment;
17. violation of any federal, state or local civil rights laws;
The Policies also contain exclusions from coverage. Of relevance to the motions now before the court is Exclusion B, the FLSA Exclusion, which states that the insurer
shall not be liable ... to make any payment for Loss in connection with any claim against the Insured: for any actual or alleged violation(s) of any of the responsibilities, obligations or duties imposed by .. . the Fair Labor Standards Act (except Equal Pay Act), . . . any rules or regulations of the foregoing promulgated thereunder, and any amendments thereto or any similar federal, state, local or foreign statutory law or common law; provided, however, this exclusion shall not apply to a Claim for Retaliation.
The plaintiffs submitted coverage claims to PIIC seeking defense and indemnification. PIIC agreed to reimburse the plaintiffs for their defense costs up to $100,000, pursuant to an endorsement that incorporated terms from prior policies with a different insurer. PIIC agreed to pay the hourly billing rates that plaintiffs’ counsel, Todd & Weld, charged to Cadete and Serpa. PIIC denied, however, full defense and indemnification up to the policy limits of $1,000,000 per claim for each plaintiff.
Serpa settled the Myers Complaint for an amount within the policy limits. The Enemark Complaint is still being litigated. Because of the substantial overlap in the underlying complaints and the respective policies, this court consolidated the cases for resolution of whether PIIC has a duty to defend and indemnify plaintiffs. Cadete’s First Amended Complaint seeks a declaratory judgment to the effect that PIIC is obligated to indemnify and provide a full defense (Count I). The complaint also asserts claims for breach of contract (Count II); breach of the covenant of good faith and fair dealing (Count III); and a violation of G.L.c. 93A (Count IV). Serpa’s complaint seeks a similar declaration.
DISCUSSION
Summary judgment will be granted where, viewing the evidence in the light most favorable to the non-moving party, all material facts have been established and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007); Mass.R.Civ.P. 56(c). “The moving parly must establish that there are no genuine issues of material fact, and that the nonmoving party has no reasonable expectation of proving an essential element of its case.” Miller v. Mooney, 431 Mass. 57, 60 (2000). See also Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
The interpretation of an insurance policy is a question of law for the court, Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982), and where the terms of the policy are unambiguous, its interpretation is appropriate for summary judgment. Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 442 (2006). Where the provisions of an insurance policy are plainly expressed, the policy must be enforced in accordance with its terms, Cody, 387 Mass. at 146, and interpreted in a manner consistent with what an objectively reasonable insured would expect to be covered. McGregor v. Allamerica Ins. Co., 449 Mass. 400, 402 (2007); City Fuel Corp. v. National Ins. Co. of Hartford, 446 Mass. 638, 642-43 (2006).
“It is settled that an insurer’s duty to defend is independent from, and broader than, its duly to indemnify.” A.W. Chesterton Co. v. Massachusetts Ins. Insolvency Fund, 445 Mass. 502, 527 (2005), and cases cited. “[A]n insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms.” Ruggerio Ambulance Serv., Inc. v. National Grange Ins. Co., 430 Mass. 794, 796 (2000) (internal quotations and citations omitted). Courts make a determination “based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the complaint.” Billings v. Commerce Ins. Co., 458 Mass. 194, 200 (2010). The duty to defend arises if the underlying complaint shows, through general allegations, “a possibility that the liability claim falls within the insurance coverage.” Id. at 200-01. ‘There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.” Id. at 201. Should the allegations in the underlying complaint lie outside the policy coverage, the insurer has no duty to investigate or defend. Id.
*183 PIIC advances two arguments in support of its motions. First, it contends that a violation of the Tips Act does not constitute a claim for an “Employment Practices Act” as that phrase is defined in the Policies, because it is not one of the covered claims listed. See supra. Second, PIIC asserts that coverage is excluded where the PIIC Policies do not apply to claims for any alleged or actual violation of the Fair Labor Standards Act (“FLSA”) or of any similar state law.
The plaintiffs first respond that the allegations underlying the claim for a violation of the Tips Act implicitly assert a breach of an implied employment agreement. They also contend that the defendants’ willful conduct was an employment-related misrepresentation, where the employee handbook implicitly represented that the wait staff would receive tips pursuant to the Tips Act. In essence, the plaintiffs ask the court to look beyond, or behind, the statutory claim. With respect to the FLSA Exclusion, the plaintiffs contend that the Tips Act is not similar to the FLSA.
I. Coverage Under the Policies
The gist of the plaintiffs’ argument is that the allegations of the complaint do not lie outside of the Policies, even though the complaints do not assert claims for breach of contract or misrepresentation. This is so, they contend, because “where a statute has been enacted seemingly intended to cover the whole subject to which it relates, including a remedy for its infraction, other provisions of the common law, including such as are remedial in nature, are thereby superseded.” School Comm. of Lowell v. Mayor, 265 Mass. 353, 356 (1928). See also Mello v. Stop & Shop Cos., 402 Mass. 555, 557(1988); King v. Driscoll 418 Mass. 576, 584 n.7 (1994). They rely on several Superior Court decisions where the court has held that, in an action for a violation of the Tips Act, common-law claims are “mere surplusage, of no legal consequence.” Moving v. Commonwealth Flats Dev. Corp., Suffolk Civ. No. 06-1115-BLS1 (August 18, 2008) (Gants, J.). See also DePina v. Marriott Int'l, Inc., 2009 WL 8554874 at *13-14 (July 28, 2009) (Henry, J.); Godt v. Anthony’s Pier 4, Inc., Suffolk Civ. No. 07-3919-BLS1 (March 24, 2008) (Hinkle, J.). Therefore, the plaintiffs contend, the Tips Act claim “roughly sketches” and even incorporates claims for breach of contract and employer misrepresentation with respect to the same tips practices.
The court is not persuaded. First, neither breach of contract nor misrepresentation is an element essential to proving a violation of the Tips Act. Second, the complaints in the above-cited cases asserted multiple common-law claims in addition to the claims for violation of the Tips Act, and set forth factual allegations in support of those claims. Such is not the case here. The underlying Complaints do not include allegations with respect to any terms of any contract, actual or implied. There is no mention of any employee handbook. Nor are there any allegations that either Cadete or Serpa made any misrepresentations of any kind. An insurer reading the Complaints could not reasonably envision that claims for a breach of contract or employment misrepresentation could be covered by the Policy. “The process is not one of looking at the legal theory enunciated by the pleader but of ‘envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.’ ” Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 12B13 (1989), quoting Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 147, (1984). In sum, the underlying complaints are completely devoid of any facts or factual allegations from which the defendant/insurer could infer claims for breach of contract or employment-related misrepresentation.
II. The FLSA Exclusion
.Even were the court to conclude otherwise, the application of the FLSA Exclusion, see supra, serves to deny coverage.[1] The plaintiffs argue that the FLSA and the Tips Act are not similar because the FLSA cannot be read to prohibit managers from sharing in a tip pool with non-managers, as does the Tips Act. They take the position that the purpose of the FLSA is to regulate wages and hours, not tip pools. Its only provision with respect to tip pooling is where an employer can offset the minimum wage of an employee who customarily receives more than $30 a month in tips by taking a “tip credit” against the minimum wage. The Tips Act, on the other hand, was designed specifically to regulate participation in a tip pool.
The defendant responds that both the Tips Act and the FLSA regulate the compensation relationship between employers and employees and are thus “similar” within the common meaning of that word. Cases interpreting the validity of a tip pool under both FLSA and the Tips Act, the defendant points out, often turn on exactly the same issue — whether or not a participant has managerial responsibilities.
The pertinent provision of the FLSA reads as follows:
In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee’s employer shall be an amount equal to — (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title. The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 *184 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.
29 U.S.C. §203(m). Emphasis added.
The Code of Federal Regulations, promulgated to interpret the FLSA, makes it clear who can participate in a tip pool and who cannot. It defines “tipped employees” as “any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips.” 29 C.F.R. §531.50. The tip credit provision reads as follows:
Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its. tipped employees in advance of the employer’s use of the tip credit of the provisions of section 3(m)... that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and that the tip credit shall not apply to any employee who has not been informed of these requirements in this section . . . With the exception of tips contributed to a valid tip pool as described in §531.54, the tip credit provisions of section 3(m) also require employers to permit employees to retain all tips received by the employee.
29 C.F.R. §531.59. Emphasis added.
Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee’s tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.
29 C.F.R. §531.52. With respect to tip pooling, the applicable section of the regulations provides that “an employer must notify its employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each employee ultimately receives, and may not retain any of the employees’ tips for any other purpose.” 29 C.F.R. §531.54.
The Tips Act provides that “If an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees.” G.L.c. 149, §152A(d). “Service employee” is defined in the Act as “a person who works in an occupation in which employees customarily receive tips or gratuities, and who provides service directly to customers or consumers, but who works in an occupation other than in food or beverage service, and who has no managerial responsibility.” G.L.c. 149, §152A(a). Emphasis added. The Act defines wait staff as, among other things, those who serve beverages or prepared food directly to patrons, or who clear patrons’ tables, and have “no managerial responsibility.” G.L.c. 149, §152A(a). The Tips Act thus provides protection for two categories of employees: (1) those who provide direct service, are not in the food and beverage service, customarily receive tips, and have no managerial responsibility and (2) those who do work in the food and beverage service and have no managerial responsibilities.
While the FLSA does not use the word “manager,” an employer “includes any person acting directly or indirectly in the interest of an employer in relation to an employee.” 29 U.S.C. §203(d). “Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees’ tips.” Chung v. New Silver Place Rest., Inc., 246 F.Sup.2d 220, 230 (S.D.N.Y. 2002); Wajcman v. Investment Corp. of Palm Beach, 2008 WL 783741 at *3 (S.D.Fla. March 20, 2008) (“The theoiy here is that employees who exercise substantial managerial authority over the day to day operations of the business are functionally the ‘employers’ themselves”). Where employers participate in a tip pool, the pool is invalid. See Ayres v. 127 Restaurant Corp., 12 F.Sup.2d 305 (S.D.N.Y. 1998) (tip pool violated FLSA where general manager was allowed to participate in the pool); Strange v. Wade, 2010 WL 3522410 at *5 (S.D. Ohio, Sept. 8, 2010).
In other words, employers are not merely barred from taking the tip credit if they share in the tip pool, they are barred from taking the tip credit if any person who does not “customarily and regularly receive tips” shares in the tip pool. Id. See also Kilgore v. Outback Steakhouse of Fla., Inc., 160 F.3d 294, 300 (6th Cir. 1998) (noting that 29 U.S.C. §203(m) “only permits tip pooling among employees who customarily and regularly receive tips”). Under the FLSA, therefore, employers are those persons who have managerial responsibilities. “(T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the ‘economic reality’ presented by the facts of each case.” Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).
The Policies do not require that the federal and state laws at issue be identical for the exclusion to apply, the laws only must be “similar.” “Similar” is defined as “having a likeness or resemblance, especially in a general way,” www.dictionary.com or “having characteristics in common.” www.Merriam-Webster.com. The purpose of the FLSA Exclusion is to prevent insurance coverage for claims alleging certain labor law violations, whether under federal or state law. See, e.g., *185 California Dairies, Inc. v. RSUI Indem. Co., 617 F.Sup.2d 1023, 1036 (E.D.Cal. 2009). Practically speaking, using the term “similar” in the FLSA Exclusion “avoids the need to catalog eveiy state and local law that is similar to the FLSA, which would be inefficient, and further puts insureds on notice that the Policy excludes coverage for violations of state labor laws similar to the FLSA.” TriTech Software Systems v. U.S. Specialty Ins. Co., 2010 WL 5174371 (C.D.Cal., 2010), citing Payless Shoesource, Inc. v. Travelers Cos., 585 F.3d 1366, 1375 (10th Cir. 2009).
The court concludes that, although the FLSA and the Tips Act are not identical, they are both designed to protect the interests of employees and enforce working conditions, and both provide remedies if an employer fails to comply. They are generally alike and share many of the same characteristics, sufficient for this court to conclude that they are “similar” as that word is commonly understood. This conclusion finds further support in the Attorney General Advisory 2004/3, An Advisory from the Attorney General’s Fair Labor Division on an Act Protecting the Wages and Tips of Certain Employees, n.2, 3, where the Attorney General’s office has declared that regulations under the FLSA provide guidance in interpretation of the Tips Act.
Finally, the plaintiffs rely on Cumbie v. Woody Woo, Inc., 596 F.3d 19 (9th Cir. 2010), for the proposition that the FLSA specifically does not prohibit managers from sharing in a tip pool. Their reliance is unavailing. In Cumbie, the Ninth Circuit considered whether the defendant had violated the FLSA when a tip pool was distributed between servers, who regularly receive tips, and kitchen staff, who do not regularly receive tips. The court concluded that, although the tip pool included “non-customarily tipped employee[s],” it did not run afoul of the FLSA because the employer did not take the tip credit. Id. at 581. However, in Cwnbie the managers did not participate in the tip pool and thus that issue was not before the court. Id. at 578 n.3. This court declines to extrapolate from Cwnbie a conclusion that managers’ participation in a tip pool is prohibited by the FLSA only if the employer takes a tip credit.
ORDER
For the forgoing reasons, the court concludes that the claims for violations of the Massachusetts Tips Act made by plaintiffs Cadete Enterprises, Inc., John Cadete, Dean Serpa Co. Inc. and Dinart Serpa, are not covered under the policies issued by defendant Philadelphia Indemniiy Insurance Company. Therefore the defendant’s motions for summary judgment are ALLOWED; and plaintiffs’ motions for summary judgment are DENIED.

 Given the court’s conclusion on this issue, it need not address the parties’ arguments regarding the remaining exclusions.