## Surabian Realty Co., Inc. *vs.* NGM Insurance Company.

Worcester. March 6, 2012. - July 12, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Insurance,* Business owner's policy, Water damage, Coverage, Construction of policy.

In a civil action involving a business owner's insurance policy issued by the defendant insurer and arising from flood damage incurred by the plaintiff policy owner at its commercial property, the judge properly granted summary judgment in favor of the insurer, where the damage resulting from a combination of water that backed up after entering a parking lot drain and water that, as a result of a sewer blockage, never entered the drain and remained surface water constituted a combination of a covered peril and a peril excluded under the policy, and therefore, the anticoncurrent cause provision of the policy operated to bar coverage. [718-723]

Civil action commenced in the Superior Court Department on October 6, 2009.

The case was heard by *Peter W. Agnes, Jr.,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Benjamin C. Rudolf (Roy A. Bourgeois* with him) for the plaintiff.

*David F. Hassett (Scott T. Ober* with him) for the defendant.

Cordy, J. Surabian Realty Co., Inc. (Surabian), appeals from the judgment entered against it on the parties' cross-motions for summary judgment. At issue is whether the motion judge erred when he concluded, as a matter of law, that an insurance policy Surabian had purchased from NGM Insurance Company (NGM) did not cover flood damage resulting from a clogged parking lot drain. We affirm.

1. *Background.* We summarize the undisputed material facts found in the summary judgment record. Surabian owns and

operates commercial and residential properties in Massachusetts and Rhode Island. One of its properties is a three-story professional office building in Foxborough. A parking lot surrounds the property, and a drain is located in the parking lot approximately twenty feet from the building.

On June 29, 2009, heavy rains fell around the area of the property. About thirty minutes after the storm began, water stopped flowing down the parking lot drain. Subsequent examination revealed that the drain had become clogged with debris. As a result, the heavy rains collected in the parking lot and seeped under the door of the building, flooding its lower level. The flooding caused damage to the carpeting, baseboards, and walls, totaling approximately $34,000.

Surabian had insured the property with a business owner's policy issued by NGM. The contract was an "all risk" insurance policy, covering damage from any peril that was not specifically excluded. One of the exclusions was for water damage. The relevant portion of the policy reads:

"B. Exclusions

"1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

" . . .

"g. Water

"(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

"(2) Mudslide or mudflow;

"(3) Water that backs up or overflows from a sewer, drain or sump; or

"(4) Water under the ground surface pressing on, or flowing or seeping through:

"(a) Foundations, walls, floors, or paved surfaces;

"(b) Basements, whether paved or not; or

"(c) Doors, windows, or other openings.

"But if Water as described in B.1.g.(1) through B.1.g.(4) results in fire, explosion, or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage."

Surabian had also purchased, at additional cost, the "OMNI Gold" indorsement to the policy. This five-page supplement replaced individual paragraphs in the business owner's policy. It amended the water exclusion as follows:

"G. Water Backup.

"Paragraph B.1.g.(3) of the BUSINESSOWNERS SPE-CIAL PROPERTY COVERAGE FORM is deleted and replaced by the following:

"The most we will pay for loss or damage caused by water that backs up or overflows from a sewer, drain or sump is $25,000 for any one occurrence."

Surabian filed a claim with NGM under the indorsement. After investigating the cause of the flooding, NGM denied the claim. NGM reasoned that the damage resulted at least in part from surface water, which was excluded by the policy.

The present action ensued. Surabian's complaint alleged breach of contract, breach of the implied covenant of good faith and fair dealing, unfair or deceptive insurance practices in violation of G. L. c. 176D, and unfair or deceptive acts or practices in viola-tion of G. L. c. 93A. The complaint also sought declaratory relief. Both parties filed motions for summary judgment on all counts. A judge in the Superior Court granted NGM's motion, finding that the damage was caused at least in part by "surface water." Although the damage was also partially caused by water that had backed up from a drain, the "anticoncurrent cause" provision of the business owner's policy excluded coverage for surface water "regardless of any other cause or event that contributes concur-rently or in any sequence to the loss." We granted Surabian's ap-plication for direct appellate review, and the case was paired for argument with *Boazova* v. *Safety Ins. Co.*, *ante* 346 (2012).

2. *Discussion.* Summary judgment is appropriate when, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Fuller* v. *First Fin. Ins. Co.*, 448 Mass. 1, 5 (2006), quoting *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). The interpretation of an insurance policy is a question of law for the trial judge, subject to our de novo review. *Boazova* v. *Safety Ins. Co., supra* at 350.

"Interpretation of an insurance policy is no different from interpretation of any other contract." *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998). We interpret all words in their usual and ordinary sense, and construe policies as a whole, without according special emphasis to any particular part over another. *Mission Ins. Co.* v. *United States Fire Ins. Co.*, 401 Mass. 492, 497 (1988). "When the policy language is ambiguous, 'doubts as to the intended meaning of the words must be resolved against the insurance company that employed them and in favor of the insured.' " *Boazova* v. *Safety Ins. Co., supra* at 350-351, quoting *August A. Busch & Co. of Mass.* v. *Liberty Mut. Ins. Co.*, 339 Mass. 239, 243 (1959). We may conclude that language is ambiguous only "where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." *Bank* v. *Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008), quoting *President & Fellows of Harvard College* v. *PECO Energy Co.*, 57 Mass. App. Ct. 888, 896 (2003). "[A]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Boazova* v. *Safety Ins. Co., supra* at 351, quoting *Citation Ins. Co.* v. *Gomez, supra.*

Our first task, then, is to construe the phrases "surface water" and "[w]ater that backs up or overflows from a sewer, drain or sump." "Surface water" is defined as "waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form part of a natural watercourse or lake." *DeSanctis* v. *Lynn Water & Sewer Comm'n*, 423 Mass. 112, 115 n.6 (1996). See *Boazova* v. *Safety Ins. Co., supra* at 354, and authorities cited. Rain that collects on a paved surface, such as a parking

lot, retains its character as surface water. See *id.* at 355, and cases cited (rain that collected on patio and migrated to house foundation considered surface water). Rainwater that collects on the ground is considered surface water even when, but for an obstruction, the water would have entered a drainage system. See *Front Row Theatre, Inc.* v. *American Mfrs. Mut. Ins. Cos.*, 18 F.3d 1343, 1348 (6th Cir. 1994); *Hirschfield* v. *Continental Cas. Co.*, 199 Ga. App. 654, 655 (1991); *Casey* v. *General Acc. Ins. Co.*, 178 A.D.2d 1001, 1002 (N.Y. 1991).

No Massachusetts case has defined the phrase "[w]ater that backs up or overflows from a sewer, drain or sump." Courts analyzing this phrase in other jurisdictions have concluded that it refers to "damage caused by water that has entered a drain and then is subsequently forced out from or through that drain." Drutz *vs.* Scottsdale Ins. Co., U.S. Dist. Ct., No. WMN-10-3499, slip op. at 8 (D. Md. Feb. 28, 2012). There is some dispute within the case law regarding whether the phrase "backs up . . . from a sewer" requires a reversal of water flow or merely a diversion within a blocked system. See *Front Row Theatre, Inc.* v. *American Mfrs. Mut. Ins. Cos.*, *supra* at 1348 (phrase encompasses damage from water that was diverted through different exit); Dent *vs.* Allstate Indem. Co., Va. Cir. Ct., No. CL-2010-3481, slip op. at 5-6 (Mar. 23, 2011), and cases cited. These cases are consistent, however, that "the water [must have] occupied the pipe or drain before it caused the damage." Dent *vs.* Allstate Indem. Co., *supra* at 5. Drutz *vs.* Scottsdale Ins. Co., *supra* at 7-12, and cases cited.

Construing these clauses in combination, we interpret the insurance contract, as amended by the indorsement, to exclude damage caused by flood waters that spread over the surface of the ground without having entered a drain, but to cover damage caused by water that backed up after entering a drain.

For purposes of summary judgment, the parties agree that the present damage resulted from the combination of water that backed up after entering the parking lot drain and water that, as a result of the blockage, never entered the drain and remained surface water. The damage thus resulted from the combination of a covered peril and an excluded peril.

When damage arises from multiple causes, an "anticoncurrent

cause" provision may operate to bar coverage. Anticoncurrent cause provisions, which disclaim coverage when damage is caused concurrently by an excluded peril and a covered peril, are valid and enforceable under Massachusetts law. See *Boazova* v. *Safety Ins. Co., supra* at 356-358; *Alton* v. *Manufacturers & Merchants Mut. Ins. Co.,* 416 Mass. 611, 613-615 (1993); *Jussim* v. *Massachusetts Bay Ins. Co.,* 415 Mass. 24, 30-31 (1993). In *Boazova* v. *Safety Ins. Co., supra* at 357, we declared that "[a]n anticoncurrent cause provision in an insurance policy does not create an ambiguity and, therefore, will be given effect according to its express terms." We added that enforcement of anticoncurrent cause provisions is fully consistent with the public welfare and that the vast majority of States have upheld and applied such provisions. *Id.*

Surabian's business owner's policy contains an anticoncurrent cause provision, quoted above, at the beginning of the exclusions section. The provision explicitly states that damage caused by an enumerated exclusion is "excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Numerous courts have barred coverage based on an anticoncurrent cause provision under virtually identical circumstances, when an obstruction caused a flood consisting of both surface water and backed up water. See, e.g., *Front Row Theatre, Inc.* v. *American Mfrs. Mut. Ins. Cos., supra* at 1349; *Hirschfield* v. *Continental Cas. Co., supra; Casey* v. *General Acc. Ins. Co., supra.* The anticoncurrent cause provision likewise forecloses Surabian's claim.

Surabian argues that the indorsement covers all flood damage caused even indirectly by a drain backup, or at the very least that the policy is ambiguous. Surabian bases its reading on the location of the coverage for water backup in an indorsement. The indorsement does not restate the surface water exclusion or the anticoncurrent cause provision. It simply provides coverage for damage caused by "water that backs up or overflows from a sewer, drain or sump." A reasonable consumer, purchasing the indorsement at additional cost, arguably would not realize that damage caused by surface water that pooled due to a drain backup remained excluded.

Surabian attempts to draw support from *Bishops, Inc.* v. *Penn Nat'l Ins.,* 984 A.2d 982 (Pa. Super. Ct. 2009), which found an

ambiguity in a policy similar to the one at issue here. The insured in *Bishops* had suffered extensive flood damage following a hurricane. *Id.* at 984. Similar to this case, the damage arose from a combination of the backup of a municipal drainage system and the overflowing of bodies of water. *Id.* The insured had purchased a basic policy that was identical in all relevant respects to the present one, including, in subsection B.1.g.(3), an exclusion for "[w]ater that backs up or overflows from a sewer, drain or sump." *Id.* at 985. The insured had also purchased an indorsement, under which the insurer promised to "pay for loss or damage . . . caused by a back up from a sewer or drain or an overflow from a sump." The indorsement further stated, "Exclusion B.1.g.(3) does not apply to this Additional Coverage." *Id.* at 987. The court held that this last sentence created an ambiguity whether the indorsement completely excised the exclusion for backups and overflows, including when they occurred concurrently with other perils, or whether it overrode only subsection B.1.g.(3), retaining the anticoncurrent cause provision. *Id.* at 991-992.

Surabian's reliance on *Bishops* is unavailing, because the indorsement in that case was written more broadly than the indorsement in the present case. That indorsement covered any loss or damage *"caused by a back up . . . or an overflow"*; this indorsement covered loss or damage *"caused by water that backs up or overflows"* (emphasis added). The former language is more expansive than the latter and might reasonably encompass damage caused by surface water that collected as a result of a backup. *Front Row Theatre, Inc.* v. *American Mfrs. Mut. Ins. Cos.*, 18 F.3d 1343, 1348 (6th Cir. 1994). In addition, that indorsement overrode subsection B.1.g.(3), stating that it *"does not apply,"* but this indorsement *"deleted and replaced"* the subsection (emphasis added). By situating the new coverage within the structure of the original policy, NGM clarified that all other provisions of the original policy continued to apply, including the surface water exclusion and the anticoncurrent cause provision. Courts have denied coverage on such facts when an indorsement "deleted" the exclusion for water that backed up, explicitly retaining the rest of the standard policy. See, e.g., Doylestown Elec. Supply Co. *vs.* Maryland Cas. Ins.

Co., U.S. Dist. Ct., No. 96-632 (E.D. Pa. Dec. 31, 1996); Montanaro *vs.* Nationwide Ins. Co., Conn. Super. Ct., No. CV010380448 (Feb. 27, 2003). In sum, we are required to "read the policy as written" and may not "revise it or change the order of the words." *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 147 (1984). The text of this indorsement is simply not susceptible to the alternative reading that Surabian urges and that the *Bishops* court credited.

We further observe that the *Bishops* court was motivated, at least in part, by expressions in Pennsylvania's "own jurisprudence that appear to hold concurrent causation exclusions in disfavor." *Bishops, Inc.* v. *Penn Nat'l Ins.*, *supra* at 993. By contrast, "[o]ur jurisprudence has never suggested . . . that denying enforcement of an anticoncurrent cause provision in a[n] . . . insurance policy is necessary to protect some aspect of the public welfare." *Boazova* v. *Safety Ins. Co.*, *ante* 346, 357 (2012). The present case gives us no reason to question that policy.

Finally, we discern no merit in Surabian's claim that our interpretation renders the indorsement illusory. As Surabian recognizes, the indorsement provides coverage for water damage resulting from the backup of an interior drain at the property. Coverage would likewise be triggered when an exterior sewer or drain backs up due to a burst water main. In addition, neither the surface water exclusion nor the anticoncurrent cause provision would bar coverage when heavy rain enters a sewer system, is diverted out of the system, and is then the sole cause of damage to property. The water would have lost its character as surface water on entering the sewer system and, at the moment of damage, the water would have been defined solely as drain or sewer water. A temporary characterization as surface water before the onset of damage does not deem the damage to be indirectly caused by surface water. *Selective Way Ins. Co.* v. *Litigation Tech., Inc.*, 270 Ga. App. 38, 40-41 (2004) (surface water exclusion and anticoncurrent cause provision inapplicable when rainwater gathered into thirteen-foot-deep hole, entered sewer pipe, and flowed into building). See *Front Row Theatre, Inc.* v. *American Mfrs. Mut. Ins. Cos.*, *supra* at 1347-1348 (portion of damage attributable to water that had entered sewer system not caused by surface water); *M & M Corp. of S.C.* v.

*Auto-Owners Ins. Co.*, 390 S.C. 255, 259-260 (2010) (rainwater channeled into stormwater collection pipes not considered surface water); *Heller* v. *Fire Ins. Exch.*, 800 P.2d 1006, 1009 (Colo. 1990) (surface water exclusion inapplicable when runoff from melted snow diverted into manmade drainage trenches before damaging property). A policy is not illusory simply because it contains a broad exclusion, so long as it provides coverage for some acts. *McGregor* v. *Allamerica Ins. Co.*, 449 Mass. 400, 404 (2007), citing *Bagley* v. *Monticello Ins. Co.*, 430 Mass. 454, 459-460 (1999). That the plain meaning of the policy, construed as a whole, results in a denial of coverage under these circumstances gives us no cause to render it illusory.

3. *Conclusion.* Because NGM's denial of coverage was based on a correct interpretation of its insurance policy, the judge properly denied all of Surabian's claims, including those under G. L. c. 93A and G. L. c. 176D. See *Lumbermen's Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 468 (1995).

*Judgment affirmed.*