# United States Court of Appeals
## For the First Circuit

Nos. 12-1572,
    12-2150

FIDELITY CO-OPERATIVE BANK, individually and as
assignee of MATTHEW KNOWLES and SONDRA KNOWLES,

Plaintiff, Appellant,

v.

NOVA CASUALTY COMPANY,

Defendant, Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Torruella, Thompson and Kayatta,
Circuit Judges.

Lawrence M. Slotnick, with whom Richard W. Jensen and Morrison
Mahoney LLP, were on brief for appellant.
    Scott T. Ober, with whom Hassett & Donnelly, P.C., was on
brief for appellee.

August 7, 2013

**TORRUELLA, Circuit Judge.** Plaintiff-Appellant Fidelity Co-operative Bank ("Fidelity"), individually and as assignee of Matthew and Sondra Knowles ("the Knowles"), appeals the granting of summary judgment to Defendant-Appellee Nova Casualty Company ("Nova"), after the district court determined that an all-risk insurance policy neither covered water damage caused to an apartment building during a tropical storm nor any resulting business interruption losses.  Fidelity challenges the district court's interpretation of the policy under its "rain limitation" provision, arguing that the policy's coverage extended to both damage "caused by" or "resulting from" rain as well as damage resulting from the entry of "surface water."  Since we agree that the water damage was covered under the all-risk policy at issue, we reverse the district court's summary judgment order and remand for further proceedings in accordance with this opinion.

## I.  Background

### A.  Factual Background

The Knowles owned a five-story mixed-use rental property at 46-50 High Street in Clinton, Massachusetts, which was approximately 100 years old.  The building had a masonry exterior and a flat, rubber-covered roof which had been installed by the previous owner one to two years before the Knowles purchased the building.  The drainage system on the roof consisted of a single drain located at the center of the roof with an internal diameter

of 2.5 inches covered by a strainer made from lead flashing.  The roof also contained two glass skylights directly above the building's stairwell.

The High Street property was mortgaged with Fidelity.  The property was insured by Nova through an all-risk policy (the "Policy") covering direct physical loss or damage to the building subject to any specific exclusion stating otherwise.  While the original policy contained an exclusion for water damage, including damage resulting from "[w]ater or water-borne material, that backs up or overflows from a sewer, drain or sump," an amendatory endorsement to the Policy explicitly deleted that exclusion.  An additional endorsement modifying the Policy added flood coverage for loss attributable to "[f]lood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to: . . . [t]he unusual or rapid accumulation or runoff of surface waters from any source."

On September 6, 2008, a tropical storm brought heavy rains to Clinton which resulted in the accumulation of a significant amount of water on the roof of the covered property.  The high volume of water overwhelmed the rooftop drain, causing the water to pool on the roof and eventually leak through the building's two skylights.  The water caused substantial damage to the interior of the building, and as a result of that damage, the Town of Clinton ordered the building to be closed, causing the

forced evacuation of all tenants. The town would not permit reentry into the building until a structural engineer provided an inspection report indicating that the structure was sound. The building was fully rented, and the closure resulted in an additional loss of rental income to the Knowles. Because the Knowles could not afford to make repairs to the building, it remained vacant.

The Knowles filed a claim for reimbursement for the interior water damage with Nova. Nova investigated the damage resulting from the storm by dispatching two engineers to the property on September 9 and 18, 2008. One engineer concluded that the "building flooded because rainwater backed up on the roof and ponded to a depth that was above two, aged and porous, metal and glass, roof skylights, which leaked significantly when submerged under water." The engineer noted the roof was not the path for water entry and concluded that the drain "failed to drain the rapidly accumulated volume of water on the roof," opining that the single drain and strainer were "inadequate." The other engineer concluded that "the obstruction of the roof drain caused the ponding of water to such a height that it flowed over the skylight curbs and entered the building."

On October 6, 2008, Nova denied the Knowles' claim. In its denial, it cited to the "rain limitation" provision, or "Limitation D.1.c." of the Knowles' policy, as well as the "faulty

workmanship exclusion," or "Exclusion C.3.c." The "rain limitation" is a listed exclusion from policy coverage if the loss suffered is to "[t]he interior of the building . . . caused by or resulting from rain, . . . whether driven by wind or not, unless [t]he building . . . first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters." The "faulty workmanship exclusion" excludes damage resulting from "[f]aulty, inadequate or defective . . . [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; materials used in repair, construction, renovation or remodeling; or maintenance of part or all of any property on or off your 'covered locations.'" In denying coverage, Nova claimed that the rainwater entered the interior of the building because of the backed-up roof drain and not through damage to the roof or walls. It also maintained, pertaining to the "faulty workmanship exclusion," that the roof drain strainer and the single 2.5-inch diameter roof drain were inadequate to handle the water deposited from the rain storm.

On December 4, 2008, after the Knowles' claim was denied, the building was vandalized and much of its copper piping was cut out, causing further damage to the property. The Knowles filed a separate claim for reimbursement for this damage, but Nova denied that claim under the "vacancy exclusion," or "Loss Conditions 6.b," of the policy, which states in pertinent part:

-5-

> If the building where the loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs[,] [w]e will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:
>
> > (a) Vandalism;
> >
> > . . .
> >
> > (e) "Theft"

Nova claimed that, since the building had been vacant for over sixty days, policy coverage did not extend to the losses or damage suffered by the vandalism and theft.

Due to these financial losses, the Knowles defaulted on their mortgage and Fidelity took title to the property through a deed in lieu of foreclosure around the beginning of 2010.

## B.  Procedural History

On February 8, 2010, Fidelity, individually and as assignee of the Knowles, filed a complaint in the Massachusetts Superior Court against Nova.  The complaint sought a declaration that the physical losses suffered by the property were covered by the Policy (Count 1), and that the loss of business income to the Knowles was likewise covered (Count 2).  Fidelity also sought monetary damage from Nova for breach of contract (Count 3), negligence (Count 4), and violations of Massachusetts' consumer protection statute, Mass. Gen. L., ch. 93A ("Chapter 93A") (Count 5).  Nova removed the case to the Massachusetts federal district court on diversity grounds.  Following discovery, Nova moved for

summary judgment on all counts of the complaint, and Fidelity cross-moved for summary judgment only as to the first two counts involving Nova's denial of coverage under the Policy.

The district court granted summary judgment to Nova on all five counts, denying Fidelity's cross-motion. It construed the issues before it as whether the rain limitation and/or the faulty workmanship exclusion applied to the loss suffered to the property. The court concluded that the "rain limitation" exclusion excluded coverage because, as the court stated, "the water pooled on the roof, thus <u>becoming surface water</u> which entered the building through the eroded metal and glass skylights. That the water pooled due to a faulty or inadequate drain does not trump the <u>surface water exclusion</u> which bars coverage." <u>Fid. Coop. Bank</u> v. <u>Nova Cas. Co.</u>, 2012 U.S. Dist. LEXIS 51313, *13 (D. Mass. Apr. 11, 2012) (emphasis added). Regarding the applicability of the faulty workmanship exclusion, however, the court strictly construed the exclusion against the insurer and held that the language did not exclude coverage here. Specifically, it found that the undisputed fact that the single roof drain was inadequate to remove the rainwater did not, on its own, trigger the faulty workmanship exclusion. Finally, it held that the vacancy exclusion of the policy excluded coverage for the Knowles' second claim for the vandalism and theft that occurred in December 2008. The court explicitly rejected Fidelity's argument that an insurer was

-7-

prevented from invoking the vacancy exclusion if its wrongful denial of the claim is the reason for the vacancy. Instead, since it had found that the denial of coverage was not wrongful under the "rain limitation" provision of the Policy, Fidelity could not attribute the reason for the vacancy to Nova.[1]

Fidelity moved for reconsideration, arguing, inter alia, that any water damage resulting from "surface waters" was covered under the amendatory endorsement to the Policy. The district court issued an electronic line order denying that motion without providing a reason. Fidelity timely appealed both the district court's summary judgment order and its denial of the motion for reconsideration.

## II. Discussion

### A. The "Rain Limitation" and "Surface Water" Coverage

On appeal, Fidelity asks this court to make sharp distinctions between "rain," water damage "caused by rain," and water damage caused by "surface water." It first requests that we narrowly construe the "caused by rain" provision in the Policy's "rain limitation" exclusion, as required under Massachusetts law, to only exclude coverage for damage whose "efficient proximate cause" was rainfall. Fidelity argues that, since the "efficient

---

[1] The court granted summary judgment to Nova on the remaining breach of contract, negligence and Chapter 93A claims, finding them dependent on the question of whether or not there was coverage under the Policy for the loss suffered.

proximate cause" in this case was not the direct entry of rainfall into the building's interior but was rather the "blocked or inadequate roof drain," as Nova's own investigation found, the damage was not "caused by rain" and did not fall within the "rain limitation" exclusion of the policy.

Further, Fidelity requests that we draw a sharp line between "rain" and "surface water" as mutually exclusive terms. While the district court found that the "rain limitation" excluded coverage because the water that pooled on the roof became "surface water" that was "caused by rain," Fidelity insists that the court's reasoning conflated two legally distinct terms. Instead, Fidelity invites us to find that, if the water on the roof was in fact "surface water" as characterized by the district court, it was no longer "rain," and the rain limitation could not bar coverage. It cites two recent decisions of the Massachusetts Supreme Judicial Court -- Boazova v. Safety Ins. Co., 462 Mass. 346 (2012) and Surabian Realty Co. v. NGM Ins. Co., 462 Mass. 715 (2012) -- both issued after the district court's opinion, to support its contention that, while "surface water" is "derived from falling rain," it is starkly distinguished from rain for the purposes of "rain limitation" exclusions under all-risk insurance policies. Fidelity goes on to conclude that, if the rain were to be characterized as "surface water" as it should under Massachusetts law, it would not be excluded from coverage because the amendatory

endorsement to the Policy covers damage resulting from surface water.

Nova, for its part, argues that the district court properly determined, under the plain language of the Policy, that the rain limitation excluded coverage of the water damage. Since the rain entered the interior of the building without prior damage to the roof or walls, it was "caused by or resulted from rain." According to Nova, automatically categorizing "rain" as "surface water" merely because it "touches some surface, ground or not," constitutes a "tortured reading" of an otherwise clear exception, according to Nova, and is contrary to the rule that insurance policies be given their plain and ordinary meaning. Nova relies on Wider v. Heritage Maintenance, Inc., 827 N.Y.S.2d 837 (N.Y.Sup. 2007), wherein the court determined that water damage was "caused by rain" and did not constitute "surface water" since it had resulted from water that had accumulated in tarps hanging from a scaffold. Nova rejects Fidelity's reliance on Boazova and Surabian Realty, arguing that those cases did not in fact deal with rain limitation exclusions, but rather "anticoncurrent causes"; they did not set out any new law in the area of "surface water" dispositive for this case.

This court reviews the entry of summary judgment de novo. Rockwood v. SKF USA, Inc., 687 F.3d 1, 9 (1st Cir. 2012). Summary judgment is appropriate when there is no genuine dispute of

material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). That this matter was resolved on cross motions does not change this standard of review, Wightman v. Springfield Terminal Ry., 100 F.3d 228, 230 (1st Cir. 1996), but where a cross-motion was made, we must decide "whether either of the parties deserves judgment as a matter of law on facts that are not disputed," Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (citation and internal quotation marks omitted).

Under Massachusetts law, the interpretation of an insurance policy is a question of law for the court. Bos. Gas Co. v. Century Indem. Co., 454 Mass. 337, 910 N.E.2d 290, 304 (Mass. 2009). The court construes the terms of the policy "de novo under the general rules of contract interpretation." Valley Forge Ins. Co. v. Field, 670 F.3d 93, 97 (1st Cir. 2012) (quoting Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000)) (internal quotation marks omitted). First, we look to "the actual language of the policies, given its plain and ordinary meaning." Id. The burden of demonstrating that an exclusion exists that precludes coverage is on the insurer, and "any ambiguities in the exclusion provision are strictly construed against [said] insurer." Id. Where "the relevant policy provisions are plainly expressed, those provisions must be enforced according to their terms and interpreted in a manner consistent

-11-

with what an objectively reasonable insured would expect to be covered." Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 11 (1st Cir. 2012) (citing City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford, 446 Mass. 638, 846 N.E.2d 775, 778-79 (Mass. 2006)).

The facts of this case are unusual relative to the cases cited by the parties in that the Policy at issue had broad, all-risk coverage as well as flood coverage under an amendatory endorsement. The Policy thus clearly covers water damage caused by "surface water," but it excludes from coverage water damage "caused by or resulting from rain." While Nova argues that the damage to the building's interior was "caused by rain" that entered the building through skylights on the roof, and was not covered unless "the building . . . first sustain[ed] damage by a Covered Cause of Loss to its roof . . . through which the rain . . . enter[ed]," we cannot agree.

Massachusetts courts have long used the "efficient proximate cause" test "to resolve coverage controversies in chain causation cases." Jussim v. Mass. Bay Ins. Co., 415 Mass. 24, 27 (1993). The test requires courts to determine the efficient proximate cause of a given loss, and "[i]f that cause is an insured risk, there will be coverage even though the final form of the property damage, produced by a series of related events, appears to take the loss outside the terms of the policy." Id. The touchstone decision defining "efficient proximate cause" under

Massachusetts law is <u>Lynn Gas & Elec. Co.</u> v. <u>Meridien Fire Ins. Co.</u>, 158 Mass. 570, 575 (1893), which clarifies that the "active efficient cause that sets in motion a train of events which brings about a result without the intervention of any force started and working actively from a new and independent source is the direct and proximate cause."

We are required to perform an efficient cause analysis under these facts due the terms of the policy at issue. While the terms of the original policy would appear to preclude such an analysis, those terms were explicitly amended and must now be strictly construed against the insurer. Specifically, section "C. Exclusions" of the original policy states:

> 1. We will not pay for loss or damage directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.
>
> f. Water
>
> (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
> (2) Mudslide or mudflow;
> (3) Water or water-borne material, that backs up or overflows from a sewer, drain or sump.

However, along with a separate "Flood Coverage" amendatory endorsement modifying the policy as discussed <u>infra</u>, the policy also contains an endorsement entitled "Amendatory Endorsement - Habitational Program," drafted by Nova, which states in Paragraph

that "Paragraph f. Water items (2) and (3) of C. Exclusions are deleted." Therefore, the policy can no longer be read to exclude coverage for damage, directly or indirectly, by water that backs up or overflows from a drain "regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage."[2] Under such circumstance, Massachusetts law as a default

---

[2] We disagree with Judge Kayatta's reasoning that "there is no coverage under the original policy form, because the original policy language plainly excludes coverage from any loss caused by surface water, even in sequence with other, covered losses." There is nothing in the language of the Flood Coverage amendatory endorsement that has preclusive effect over any other claim for damage brought under any other term of the policy, including a claim brought on the basis of water damage resulting from drain overflow. The concurrence/dissent suggests that, because Exclusion C.1.f(1) remains in the original policy, even if amended by the Flood Coverage amendatory endorsement, any damage resulting from sequential events, including sequential events involving drain overflow, are not covered. Rather, strictly construing the policy against the insurer, Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000), we read the deletion of Paragraph C.1.f(3) as removing any prohibition against coverage for a legitimate claim caused by drain overflow, whether directly or indirectly caused. What the Amendatory Endorsement - Habitational Program effectuated was the striking of the entire phrase pertaining to the drain overflow exclusion, including the portions of the provision excluding coverage for damage caused from drain overflow, should there be intervening, indirect, or sequential causes. This is so because what amendatory endorsement deleted was not only the terms "Water or water-borne material, that backs up or overflows from a sewer, drain or sump," but rather the entire sentence: "We will not pay for loss or damage directly or indirectly by [water or water-borne material, that backs up or overflows from a sewer, drain or sump]. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." Since that entire exclusion was deleted, we most forcefully conclude that damage caused by drain overflow, even if indirectly caused or caused in a sequences with other causes, would be entitled to coverage as a result of the amendatory endorsement without a deductible (since only the Flood Coverage amendatory endorsement

-14-

kicks in to require an efficient cause analysis in interpreting the scope of coverage under the policy.  <u>Jussim</u>, 415 Mass. at 27.

In this case, Nova's own experts determined that the blocked or inadequate roof drain caused the "water to accumulate on the flat roof trapped at the perimeter by parapet walls."  Nova's engineers found that the water damage occurred because rainwater had "backed up on the roof and ponded" and the roof had thus "flooded."  Thus, we find that, when the blocked or inadequate drain was overwhelmed by the severe rainstorm, it set in motion a "train of events" lacking the intervention of any forces or the activation of a new source to cause the interior water damage.  The failure of the drain must properly be deemed the "efficient proximate cause" of the damage, not the rain.   The blocked or inadequate roof drain was a covered loss under the Policy in that the Policy covered the "risk of direct physical loss," and was not excluded by any other exclusion.  Accordingly, it was error for the district court to conclude that the interior damage was "caused by rain" and was excluded from coverage under the rain limitation provision.

Nova does not directly contest the finding of the district court that the faulty workmanship exclusion was not triggered, and we do not disturb that finding to create an

---

requires a deductible; the Amendatory Endorsement- Habitational Program does not).

exception to coverage in this instance. As the district court found, the faulty workmanship exclusion was "intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured or someone authorized by him." Husband v. Lafayette Ins. Co., 635 So.2d 309, 311 (La. Ct. App. 1994). The court was required to strictly construe exclusionary clauses against the insurer, Vappi & Co. v. Aetna Casualty & Surety Co., 204 N.E.2d 273, 276 (Mass. 1965), and its conclusion was fortified by the undisputed evidence on record that the roof was repaired prior to the Knowles' ownership, that the Knowles did not repair, renovate or replace the roof or its drain, and Nova's Property Technical Claim Manager and designated witness, John Slootweg, admitted that the roof strainer or drain cover did not constitute "faulty, inadequate or defective maintenance."

We next turn to the district court's determination that the water damage resulted from "surface water."[3] Nova does not

_____

[3] We address the application of the rain limitation provision and the surface water exclusion separately as Fidelity makes two separate arguments for coverage on appeal because the policy at issue treats coverage under each respective provision differently. Under the policy, there is no deductible for damage if the rain limitation does not apply. However, for damage resulting from "surface water," there is a $25,000 deductible. For this reason, Fidelity, according to its brief, "sought to avoid the application of this increased deduc[t]ible by taking the position that all it needed to argue was that the water on the roof ceased to be 'rain,' but had not necessarily become 'surface water.'" As discussed supra, Fidelity, argued in the alternative on appeal that the policy covered damage resulting from surface water, the district court having passed on the issue.

-16-

contest this finding, but contends that the issue of whether the water damage was covered under the amendatory endorsement of the policy was waived because "Fidelity made no arguments which characterized the rain as 'surface water' and did not argue application of the Flood Coverage endorsement to the Nova Policy."

We cannot agree with Nova.  The issue is not waived on appeal as it was an issue directly passed on sua sponte by the court below.  Specifically, the district court determined that, because the water that damaged the interior of the property was "surface water," it was not covered under the Policy.  The general rule regarding waiver is that "it is only in exceptional cases . . . that [this Court] considers questions urged by a[n] . . . appellant not pressed or passed upon in the courts below."  Turner v. Rogers, 131 S. Ct. 2507, 2525 (2011) (quoting McGoldrick v. Compagnie Generale Transatlantique, 309 U.S. 430, 434 (1940)); see also Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").  Since the district court addressed and passed on the issue directly, Fidelity is free to address the issue so raised in this appeal.  Further, Fidelity did in fact raise the issue in the court below when it filed its motion for reconsideration following the district court's granting of summary judgment to Nova.  In that motion, Fidelity alerted the court to the issues surrounding the "surface water" exclusion, the

Flood Coverage amendatory endorsement of the Policy, and the legal distinction between "rain" and "surface water." Fidelity cannot thus be construed as having voluntarily relinquished a known right since it expressly raised and argued the issue in a motion whose denial was timely noticed for appeal. See Pike v. Guarino, 492 F.3d 61, 72 (1st Cir. 2007) (citing United States v. Olano, 507 U.S. 725, 733 (1993)).

Having determined that Fidelity has not waived the "surface water" issue, we proceed to assess whether the district court erred in deeming the water damage the result of "surface water" not covered under the Policy. "Surface water" under Massachusetts law has been defined as "waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake." Boazova, 462 Mass. at 354 (quoting DeSanctis v. Lynn Water & Sewer Comm'n, 423 Mass. 112, 115 n.6 (1996)). In Boazova, the Supreme Judicial Court found that water that had accumulated on a patio that was "higher than the grade of the house's foundation" which "simply flowed along the patio and seeped into Boazova's house" fit within the definition of "surface water": "The mere migration of water from the patio into the wooden sill, floor joists, and wall studs did not change its essential character as 'surface water.'" 462 Mass. at 355. In Surabian Realty Co., the Court stated that "[r]ain that

-18-

collects on a paved surface, such as a parking lot, retains its character as surface water. Rainwater that collects on the ground is considered surface water even when, but for an obstruction, the water would have entered a drainage system." 462 Mass. at 718-19 (citations omitted). The Court went on to include in the definition of "surface water" "flood waters that spread over the surface of the ground without having entered a drain." Id. at 719. Therefore, in those two recent cases, the Supreme Judicial Court confirmed that damage resulting from water that flooded into properties after accumulating on artificial surfaces does not lose its character as "surface water" merely because it flowed along the artificial surface and seeped into or continued to flow onto the property. See Boazova, 462 Mass. at 355; Surabian Realty, 462 Mass. at 718-19. Given the similarities between the district court's factual findings here and the circumstances detailed in recent Supreme Judicial Court rulings regarding "surface water," we see no reason to disturb the district court's finding that the "ponded" water on the roof of the property here was "surface water." See also Gengel C&S Builders, Inc. v. Land Planning, Inc., 79 Mass. App. Ct. 1120, 2011 Mass. App. Unpub. LEXIS 690, *1 (May 23, 2011) (equating "ponding" water with "surface water").

Where we cannot agree with the district court, however, is on the issue of whether the surface water damage was excluded from coverage under the Policy. As recited supra, the amendatory

-19-

endorsement to the Policy independently provides coverage for flooding caused by "[t]he unusual or rapid accumulation or runoff of surface waters from any source."  The flood coverage provision defines "flood" as a "general and temporary condition of partial or complete inundation of normally dry land areas," and the inundation of the roof was such a condition.  The roof may be considered a "dry land area" under standard technical definitions of "land":

> The word "land" includes not only the soil, but everything attached to it, whether attached by the course of nature, as trees, herbage, and water, or by human hands, as buildings, fixtures, and fences.

63C Am. Jur. 2d Property, § 12 (2006); see also Delaney v. Lowery, 25 Cal. 2d 561, 571 (1944); Bruno v. City of Long Branch, 21 N.J. 68, 73 (1956).  Therefore, the water damage resulting from entry of the "surface water" into the interior of the building was explicitly covered under the plain and unambiguous language of the Policy.  It was error on the part of the district court when it neither considered the language of the amendatory endorsement in its denial of Fidelity's motion for summary judgment on the basis of its "surface water" finding nor assessed the significance of that endorsement to Fidelity's claim when it was called to the court's attention in Fidelity's motion for reconsideration.

Since the evidence established as a matter of law that the damage to the interior of the Knowles' property was not "caused by rain," and in any case would have been covered by the amendatory

-20-

endorsement of the Policy as "surface water," the declaratory judgment in favor of Nova regarding coverage for the losses sustained to the property from water damage on September 6, 2008, is reversed, as is the denial of Fidelity's cross-motion for summary judgment on that claim. We remand for the district court's reconsideration, in accordance with the strictures of this opinion, the entry of partial summary judgment on counts 1, 2, and 3 of Fidelity's complaint. Since the district court summarily reviewed and reached findings regarding Fidelity's business income loss claim and subsidiary state law claims based on erroneous legal findings reversed here, those claims are also remanded for further proceedings.

### III.  Conclusion

We reverse the grant of summary judgment to Nova for the declaratory relief requested regarding coverage under the Policy of the September 2008 water damage claim. The case is remanded to the district court for further proceedings in accordance with this opinion.

**Reversed and Remanded**.

**-Concurring and Dissenting opinion follows-**

**Kayatta, Circuit Judge, (Concurring in part and Dissenting in part).** I agree with my colleagues that there was coverage under the Nova policy for the damage caused by water on September 6, 2008. I also agree that the dismissal of Fidelity's other claims must be vacated. I respectfully disagree with my colleagues on only one point that affects the outcome of this case: I would hold that, because there would be no coverage here but for an amendatory endorsement for so-called flood coverage, the $25,000 deductible for coverage provided under that endorsement must apply.

The majority correctly concludes that a so-called "chain" or "train" of events caused the loss here: it rained, the rain backed up at the drain, and the backed-up water eventually pooled high enough to flow over the tops of the skylights. In reaching that conclusion, the majority also correctly concludes that the pooled water on the roof was surface water, not rain.

Under the original policy form, all three causes of the loss were excluded: Subparagraph 1.e of paragraph D (labeled "Limitations") excluded coverage for damage caused by rain; subparagraph 1.f(3) of Paragraph C (labeled "Exclusions") excluded coverage for water backed up from a drain; and subparagraph 1.f(1) of that same Paragraph C excluded coverage for a flood of surface water.

The exclusions for the drain and surface water in Paragraph C (but not the limitation for rain in Paragraph D) were

-22-

accompanied by a dual or "chain" cause provision stating as follows: "We will not pay for loss or damage directly or indirectly by [excluded causes]. Such loss or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss or damage." Under Massachusetts law, such language precludes application of the "efficient cause" doctrine to salvage coverage from the force of the exclusion. See Jussim v. Mass. Bay Ins. Co., 415 Mass. 24, 30-31 (1993).

As the majority notes, one amendatory endorsement deleted paragraph C.1.f(3); therefore, the exclusion for water backed up from a drain disappeared. That first amendatory endorsement, however, did not delete the exclusion under paragraph C.1.f(1) for damage caused by surface water. Therefore, even if one agrees, as I do, that the backed-up drain was a cause of the loss, there is no coverage under the original policy form, because the original policy language plainly excludes coverage from any loss caused by surface water, even in sequence with other, covered losses.

What rescues the owner is the separate amendatory coverage for floods that the owner also purchased. It covers damage caused by "the unusual or rapid accumulation or run-off of surface water from any source." Unlike the amendment concerning the drain, the flood endorsement deletes nothing from the standard policy form. Rather, it simply renders inapplicable only such parts of the water exclusion in the standard policy that conflict

with the flood endorsement ("that part of the Water Exclusion does not apply").

Accordingly, coverage would not exist here but for the amendatory endorsement for flood coverage. And that coverage, as Fidelity admits, comes with a $25,000 deductible "for coverage provided under this endorsement."