# United States Court of Appeals
## For the First Circuit

No. 23-1167

ZURICH AMERICAN INSURANCE COMPANY,

Plaintiff, Appellee,

v.

MEDICAL PROPERTIES TRUST, INC.,

Defendant, Appellant.

No. 23-1180

STEWARD HEALTH CARE SYSTEM, LLC,

Plaintiff, Appellant,

v.

AMERICAN GUARANTEE AND LIABILITY INSURANCE
COMPANY; ZURICH AMERICAN INSURANCE COMPANY,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Gelpí, Montecalvo, and Rikelman,
Circuit Judges.

Creighton K. Page, with whom Martin C. Pentz, Laura D. Gradel, Natalie F. Panariello, Foley Hoag LLP, Dale Jefferson, and Martin, Disiere, Jefferson & Wisdom were on brief, for appellant Medical Properties Trust, Inc.

Howard M. Cooper, with whom David H. Rich, Matthew S. Furman, and Todd & Weld LLP were on brief, for appellant Steward Health Care System, LLC.

Patrick F. Hofer, with whom Clyde & Co US LLP was on brief, for appellees Zurich American Insurance Company and American Guarantee and Liability Insurance Company.

December 19, 2023

**MONTECALVO**, <u>Circuit Judge</u>. This interlocutory appeal requires us to decide whether under Massachusetts law the term "surface waters" as used in a property insurance policy includes rainwater that accumulated on a parapet roof one or more stories above the ground. Indeed, the interpretation of "surface waters" is dispositive of whether the insureds, appellants Medical Properties Trust, Inc. ("MPT") and Steward Health Care System LLC ("Steward"), are subject to coverage limitations on "Flood" damage in the policies issued by appellees Zurich American Insurance Company ("Zurich") and American Guarantee and Liability Insurance Company ("AGLIC").

The definition of "surface waters" in this particular context presents a novel issue of Massachusetts law not previously addressed by the Massachusetts Supreme Judicial Court ("SJC"). Furthermore, existing SJC case law does not point towards a clear answer and deciding this question requires policy judgments on applying Massachusetts law to this key insurance coverage issue. Therefore, for the reasons below, we certify the issue to the SJC pursuant to Massachusetts SJC Rule 1:03.

## I. Background

On June 28, 2020, Norwood Hospital Facility ("the Hospital"), a building owned by MPT and leased to Steward by MPT, suffered significant damage after severe thunderstorms passed through Norwood, Massachusetts. Torrential rain and strong wind

gusts caused heavy flooding in the basement of the Hospital's two main buildings. Rainwater also accumulated on the Hospital's roof and a second-floor courtyard, eventually seeping into the Hospital's upper floors. As relevant here, some of the Hospital's buildings have "parapet roofs," meaning a roof enclosed by a wall surrounding the roof's outer perimeter. Moreover, the rainwater that inundated the Hospital's upper floors from the roof and courtyard never reached the earth's natural surface nor any other ground-level surface before entering the Hospital.

After the storms, MPT sought coverage from its property insurer, Zurich. Likewise, Steward sought coverage from its insurer, AGLIC. The Zurich and AGLIC policies contain substantively identical language on the pertinent coverage and limitation provisions at issue here. The Zurich policy provides a total of $750 million in coverage for "damage caused by a Covered Cause of Loss to Covered Property." The AGLIC policy provides a total of $850 million in coverage for "damage caused by a Covered Cause of Loss to Covered Property."

Both policies consider "Flood" a "Covered Cause of Loss." In relevant part, the policies define "Flood" as:

> A general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by:
>
> The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising,

- 4 -

> overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not[.]

(emphasis added). But both policies limit the amount of coverage for damage found to be caused by "Flood." Specifically, Zurich limits its "Flood" coverage to $100 million, while AGLIC limits its "Flood" coverage to $150 million.

In their initial evaluations issued in August 2020, Zurich and AGLIC determined that water damage in the Hospital's basement was caused by "Flood," and would be subject to the policies' respective coverage limits. As for the damage on the upper floors of the Hospital, Zurich and AGLIC explained that such damage "appears to have resulted from water intrusion caused by wind driven rain and/or overflow of roof drains and parapet flashings." Accordingly, Zurich and AGLIC indicated that they would "separate the flood damage sustained on the basement and ground floors . . . from the water intrusion property damage sustained on the first, second[,] and third floors."

A few months later, MPT and Steward submitted proof of loss claims to Zurich and AGLIC that each exceeded $200 million. On December 23, 2020, Zurich responded to MPT's submission by recognizing that MPT claimed "the full $100 million Flood sublimit . . . plus an additional $121,033,890 for what MPT identifies as 'Storm'" damage. Contrary to its initial evaluation from August

2020, however, Zurich stated that it "believes that substantially all of the building damages that occurred on June 28, 2020 are subject to the Flood sublimit." In other words, rather than "separat[ing]" the "Flood" damage in the basement from what it previously construed as non-"Flood" damage on the upper floors, Zurich now maintained that "damage from water which entered the building at ground (or below) levels is subject to the Flood sublimit, as is water that accumulated on roof areas and then entered the building." And with respect to the water damage from the roof, Zurich characterized the cause as "<u>surface water</u> accumulating on roof areas and subsequently flowing into the building interior." (emphasis added). Zurich thus interpreted MPT's claim for $121,033,890 in "Storm" damage as an improper attempt to circumvent the $100 million "Flood" damage sublimit and refused to accept the full value of MPT's claim submission.

AGLIC mirrored Zurich's approach in denying Steward's claim for "$112,218,364 for what [Steward] terms 'Flood' and a further $90,265,515 for what is termed 'Storm.'" Using the same language contained in Zurich's response to MPT, AGLIC informed Steward that it concluded that the water damage was entirely attributable to "Flood," and it would enforce the policy's $150 million "Flood" sublimit for all damage throughout the Hospital.

On October 4, 2021, Zurich filed suit against MPT seeking a declaratory judgment that "MPT's recovery under the Policy cannot

- 6 -

exceed the Policy's $100 million sublimit applicable to Flood" because the damage was caused by "surface water" accumulation. Meanwhile, on November 23, 2021, Steward sued AGLIC seeking a declaratory judgment that the $150 million "Flood" coverage limit did not apply to all of its losses.

Soon after the lawsuits were filed, the district court held a scheduling conference where the parties agreed that interpreting the term "surface waters" contained in the policies' "Flood" definitions should be resolved in early cross-motions for partial summary judgment. On August 10, 2022, during the hearing on the partial summary judgment motions, the district court requested that the parties brief whether its impending decision should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The parties jointly agreed that the district court's ruling on the "surface waters" issue was appropriate for interlocutory appeal.

On October 19, 2022, the district court issued its order in Zurich's case against MPT. In granting Zurich's motion for partial summary judgment, the district court rejected MPT's argument that "'surface water' is limited to waters flowing naturally and spreading diffusely over surfaces at ground level." Instead, the district court concluded that "the term 'surface waters' is not limited to the accumulation of water on the ground." As will be explained in further detail below, the district court

held that "the SJC did not define 'surface waters' to exclude accumulation of surface waters that are 'constrained' before flowing on the ground," like water enclosed within the walls of a parapet roof.  A few weeks later, in an order adopting by reference its decision in Zurich's case, the district court granted AGLIC's motion for partial summary judgment against Steward.

Shortly thereafter, the district court certified the present cases for interlocutory appeal under 28 U.S.C. § 1292(b). These timely appeals followed.

## II. Discussion

The SJC permits federal courts to certify questions of Massachusetts law "which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of [the SJC]."  Mass. S.J.C. R. 1:03.

Here, it is clear that whether rainwater pooled on a parapet roof constitutes "surface waters" in the policies' "Flood" definition is determinative of this interlocutory appeal.  But our conclusion that we lack controlling precedent from the SJC requires further explanation.

### A. This Court's Decision in <u>Fidelity Co-operative Bank</u> v. <u>Nova Casualty Co.</u>

On appeal, MPT and Steward insist that the district court made two main errors.  First, they argue that the district court

wrongly treated this court's decision in <u>Fidelity Co-operative</u> <u>Bank</u> v. <u>Nova Casualty Co.</u>, 726 F.3d 31 (1st Cir. 2013) -- where the parties did not dispute that water accumulated on a parapet roof was "surface water" under a substantively similar property insurance policy -- as binding precedent when the "surface water" discussion in <u>Fidelity</u> was merely dicta. Second, they contend that the district court adopted an unreasonable interpretation of "surface waters," contrary to the SJC's definition and precedent, and wrongly rejected MPT and Steward's plausible interpretation of the term.

In <u>Fidelity</u>, this court was presented with an "unusual" circumstance where the insureds' property insurance policy contained two amendatory endorsements providing coverage for water damage that would have otherwise been excluded. 726 F.3d at 33, 37. Under the first amendatory endorsement (the "Habitational Program" endorsement), the policy was amended to cover damage caused "directly or indirectly, by water that backs up or overflows from a drain 'regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.'" <u>Id.</u> at 37. The second amendatory endorsement (the "Flood" endorsement) "added flood coverage for loss attributable to '[f]lood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due

to: . . . [t]he unusual or rapid accumulation or runoff of surface waters from any source.'" Id. at 33 (alterations in original).

The insureds' building was damaged during a storm that "overwhelmed the rooftop drain, causing the water to pool on the roof and eventually leak through the building's two skylights." Id. This court first considered the district court's rejection of the insureds' argument that water damage from the rooftop drain failure was covered by the Habitational Program endorsement. Id. at 35-38. The district court agreed with the insurer that the policy's "rain limitation," which excluded coverage for damage "caused by rain," barred coverage despite the Habitational Program endorsement. Id. at 35. "[B]ecause the water that pooled on the roof became 'surface water,' that was 'caused by rain,'" the district court reasoned that the rain limitation precluded the insureds from invoking the Habitational Program endorsement's drain failure coverage. Id. at 35-36.

This court held that "it was error for the district court to conclude that the interior damage was 'caused by rain' and was excluded from coverage under the rain limitation provision." Id. at 38. In reversing, we pointed out that the insurer's "own experts determined that the blocked or inadequate roof drain caused the 'water to accumulate on the flat roof trapped at the perimeter by parapet walls.'" Id. Consequently, we held that the damage was covered under the Habitational Program endorsement, as "[t]he

failure of the drain must properly be deemed the 'efficient proximate cause' of the damage, not the rain." Id.

The Fidelity court's interpretation of the term "surface water" was somewhat intertwined with its opening analysis on whether the rain limitation nullified coverage under the Habitational Program endorsement. At the outset, the district court described the rainwater pooled on the parapet roof as "surface water." Id. at 35, 39. But it contradictorily maintained that the insureds were not entitled to coverage because it failed to account for the Flood endorsement's applicability. Id. at 39-40. This court concluded that, even setting aside the Habitational Program endorsement, damage caused by "surface water" was covered under the Flood endorsement and pointed out the district court's error in neglecting to "consider[] the language of the [Flood] amendatory endorsement." Id.

Here, Zurich and AGLIC reasonably point to Fidelity as substantive support for their contention that rainwater pooled on a parapet roof is surface water. MPT and Steward respond by presenting several compelling reasons for deeming Fidelity's interpretation of "surface water" to be dicta. For example, neither party in Fidelity disputed that water pooled on a parapet roof constituted "surface water." Id. at 39. Relatedly, the district court's conclusion that the water on the roof was "surface water" was made "sua sponte" and in a barebones manner. Id. But

- 11 -

this court saw "no reason to disturb" the district court's "surface water" ruling, instead reversing because the district court failed to consider the impact of the Flood endorsement's coverage of "surface water" damage. Id. So, according to MPT and Steward, the Fidelity court's interpretation of "surface water" and its conclusions related to coverage under the Flood endorsement did not provide direct grounds for its only dispositive holding that the Habitational Program endorsement covered damage caused by drain failure.

**B. The SJC's Decisions in Boazova v. Safety Insurance Co. and Surabian Realty Co., Inc. v. NGM Insurance Co.**

Regardless of whether we deem Fidelity's discussion of surface waters to be dicta, a close look at SJC precedent on "surface waters" makes clear that the present issue is one of first impression under Massachusetts law. In fact, it is determining that we lack sufficient guidance from the SJC that leads us to certify the question. Cf. McKesson v. Doe, 141 S. Ct. 48, 51 (2020) (recognizing that "[t]he Louisiana Supreme Court . . . may announce the same [conclusion] as the Fifth Circuit," but holding that the Fifth Circuit erred in failing to certify the question in the first place).

In Fidelity, this court highlighted two SJC cases interpreting "surface waters" that were decided during the appeal's pendency: (1) Boazova v. Safety Insurance Co., 968 N.E.2d

385 (Mass. 2012), and (2) Surabian Realty Co., Inc. v. NGM Insurance Co., 971 N.E.2d 268 (Mass. 2012). In both cases, the SJC held that water pooled on an artificial surface, either at ground level (rainwater on a paved parking lot in Surabian Realty) or slightly elevated above the ground (rain and melted snow on a low backyard patio in Boazova), constituted "surface waters." Surabian Realty, 971 N.E.2d at 271-72; Boazova, 968 N.E.2d at 393.

As the Boazova court explained, the SJC has defined "surface waters" as: "waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a natural watercourse or lake." 968 N.E.2d at 392 (quoting DeSanctis v. Lynn Water & Sewer Comm'n, 666 N.E.2d 1292, 1295 n.6 (Mass. 1996)). In Boazova, the insured's home was "built against the side of a hill and supported by a concrete foundation, with a full basement and garage below the house." Id. at 387. The insured's backyard patio "was built along the rear wall of the house at a grade that was higher than the home's foundation." Id. at 387-88. Because "the patio was higher than the grade of the house's foundation, the water that accumulated thereon . . . flowed along the patio and seeped into [the insured's] house." Id. at 393. Although the water on the patio did not reach the earth's natural surface before entering the home, the court held that "[t]he mere migration of water from the patio into the wooden sill, floor

joists, and wall studs did not change its essential character as 'surface water.'"  Id.

Similarly, in Surabian Realty, "heavy rains collected in the parking lot" of a commercial building "and seeped under the door of the building, flooding its lower level."  971 N.E.2d at 270.  Citing Boazova and the SJC's definition of "surface waters," the Surabian Realty court concluded that "[r]ain that collects on a paved surface, such as a parking lot, retains its character as surface water[,] . . . even when, but for an obstruction, the water would have entered a drainage system."  Id. at 272.  As such, because the insurance policy excluded "surface water" damage, the Surabian Realty court held that the insurer properly denied coverage.  Id. at 274-75.

The Fidelity court relied on Boazova and Surabian Realty to bolster its decision not to disturb the district court's conclusion that rainwater pooled on a parapet roof was also "surface water."  But the extent to which the Fidelity court actually analyzed (or needed to analyze) the underlying facts and reasoning in those cases is debatable.  As detailed above, the insured in Fidelity conceded that the water on the roof was "surface water," and this court's determination that the Flood endorsement covered "surface water" damage was ancillary to its initial holding that the Habitational Program endorsement covered drain failure damage.  More importantly, the SJC has not addressed

- 14 -

whether rainwater that collects on a roof without reaching the earth's natural surface constitutes "surface water."

And despite Boazova and Surabian Realty, "we cannot say that the course that the SJC would take is reasonably clear." Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 51 (1st Cir. 2013). For example, courts in other jurisdictions that have encountered the question of whether water pooled on a roof -- as opposed to other artificial surfaces at ground level -- is "surface water" have reached divergent conclusions. Compare Cochran v. Travelers Ins. Co., 606 So. 2d 22, 24 (La. Ct. App. 1992) (holding that "surface water" does not "encompass . . . rainwater, falling from the sky, overflowing the rooftop and seeping into the interior of the building from the 'roof, its gutters, and the metal capping on the roof'"), with Martinez v. Am. Fam. Mut. Ins. Co., 413 P.3d 201, 206 (Colo. App. 2017) (concluding that a rooftop is "a mere continuation of 'the earth's surface,'" such that water pooled on the roof is "surface water" under a similar definition to the one adopted by the SJC (quoting Heller v. Fire Ins. Exch., 800 P.2d 1006, 1008 (Colo. 1990))).

Given that interpreting "surface waters" in the context of water pooled on a roof is determinative of the case and it is not clear from existing case law how the SJC would resolve this issue, we are well within our discretion to order certification. See Easthampton Sav. Bank, 736 F.3d at 51 ("The course that the

- 15 -

state court would take is not reasonably clear when a case 'presents a close and difficult legal issue.'" (quoting In re Engage, Inc., 544 F.3d 50, 53 (1st Cir. 2008))); Bos. Gas Co. v. Century Indem. Co., 529 F.3d 8, 15 (1st Cir. 2008). But we also think certification is warranted for an additional reason. In particular, "resolution may require policy judgments about the applicability of Massachusetts law that the SJC is in the best position to make." In re Hundley, 603 F.3d 95, 98 (1st Cir. 2010). Therefore, the certification mechanism prudently allows us to provide the SJC with an opportunity to apply its law and policy judgments on this important, undecided issue.

### III. Conclusion

The question below will be certified to the Massachusetts SJC for its consideration:

> Whether rainwater that lands and accumulates on either (i) a building's second-floor outdoor rooftop courtyard or (ii) a building's parapet roof and that subsequently inundates the interior of the building unambiguously constitutes "surface waters" under Massachusetts law for the purposes of the insurance policies at issue in this case?

We welcome any further guidance from the SJC on any other relevant aspect of Massachusetts law that it believes would aid in the proper resolution of the issues presented here.

The clerk of this court is directed to forward to the Massachusetts SJC, under the official seal of this court, a copy of the certified question, this opinion, the district court's

- 16 -

opinion, and the merits briefs and appendices filed by the parties. We retain jurisdiction over this case pending resolution of this certified question.