638                                         446 Mass. 638 (2006)

City Fuel Corp. *v.* National Fire Insurance Company of Hartford.

CITY FUEL CORP. *vs.* NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD.

Suffolk. March 10, 2006. - May 10, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Insurance,* Motor vehicle insurance, Pollution exclusion clause, Construction
of policy. *Contract,* Insurance. *Consumer Protection Act,* Insurance.

A commercial automobile insurance policy's provisions concerning liability
for damages caused by the release of pollutants being transported by the
insured covered the plaintiff, an oil delivery company, for damages result-
ing from the release of oil from one of its trucks while the truck was
parked overnight between deliveries, where an objective purchaser in the
position of the insured would reasonably believe that a release of oil would
be covered from the time the oil was loaded onto its trucks until the time it
was delivered to the customer, at least in the ordinary course. [639-643]
In a dispute concerning the interpretation of language contained in an insur-
ance policy, the judge did not err in granting summary judgment in favor
of the insurer on the plaintiff's claim under G. L. c. 93A, where the
interpretation of the policy's language was an issue of first impression, and
where the insurer's position was reasonable. [643-644]

CIVIL ACTION commenced in the Superior Court Department on
January 30, 2002.

The case was heard by *Joseph M. Walker, III,* J., on a motion
for summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Owen Gallagher* (*Kara Larzelere* with him) for the plaintiff.

*Michael F. Aylward* (*Gareth W. Notis* with him) for the
defendant.

CORDY, J. In this case, we are called on to resolve a dispute
regarding the interpretation of a pollution liability indorsement
and a pollution exclusion clause, both contained in a com-
mercial automobile insurance policy issued to City Fuel Corp.
(City Fuel) by National Fire Insurance Company of Hartford
(National Fire). The policy covered City Fuel's oil delivery

trucks. The indorsement provided coverage for damages arising out of the release of pollutants "[b]eing transported" by such trucks, or "[o]therwise in the course of transit by or on behalf" of City Fuel.

A controversy arose when approximately one hundred gallons of oil leaked from the tank of one of the delivery trucks while it was parked overnight. Coverage was denied by National Fire under a pollution exclusion clause in the policy for the release of pollutants "[b]eing stored . . . upon the covered auto." City Fuel then brought the present action. The facts not being in dispute, a judge in the Superior Court granted summary judgment for National Fire on City Fuel's claims for declaratory relief and for damages under G. L. c. 93A.[1] City Fuel appealed and we granted its application for direct appellate review. We reverse the judgment for declaratory relief and direct entry of judgment for City Fuel. We affirm summary judgment for National Fire on the G. L. c. 93A claim.

*Discussion.* "An insurance policy . . . is to be construed with reference to the customs of the trade or course of business respecting which it is issued. The insurer is charged with notice of such practices and his liability is to be determined in that light." *Koshland* v. *Columbia Ins. Co*, 237 Mass. 467, 472 (1921).

City Fuel is in the business of delivering oil to residential customers on a retail basis. It purchases the oil from Sprague Energy Corp. The oil is transferred to City Fuel's delivery trucks at Sprague Energy's terminal (terminal). Once loaded, the trucks deliver the oil to City Fuel's customers pursuant to a computer-generated list that estimates when those customers will need oil and in what amounts. During the course of the day, the trucks may return to the terminal to be refilled with oil as needed to continue making deliveries. At the end of each business day, the trucks return to the terminal, where they park overnight. If a truck has any undelivered oil in its tank, the oil remains there until it is delivered to customers on the following business day. The question we must answer is whether the insurance policy, properly interpreted, covered the release of oil from

[1]The G. L. c. 93A claim was based on City Fuel's contention that the denial of coverage by National Fire was an unfair or deceptive act.

a City Fuel truck while it was parked overnight between deliveries.

The interpretation of an insurance policy is a question of law. *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). When interpreting insurance policies, courts are guided by several principles. Like all contracts, an insurance policy is to be construed according to the fair and reasonable meaning of its words. *Id.* Exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protection purchased by the insured. See *Vappi & Co.* v. *Aetna Cas. & Sur. Co.*, 348 Mass. 427, 431-432 (1965). Doubts created by any ambiguous words or provisions are to be resolved against the insurer. *August A. Busch & Co. of Mass., Inc.* v. *Liberty Mut. Ins. Co.*, 339 Mass. 239, 243 (1959).

The policy contained a general exclusion for bodily injury or property damage arising out of the release of pollutants. In relevant part, coverage was excluded for the release of "pollutants . . . [t]hat are, or that are contained in any property that is:

> "(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered 'auto';

> "(2) Otherwise in the course of transit by or on behalf of the 'insured'; or

> "(3) Being stored, disposed of, treated or processed in or upon the covered 'auto' . . . ."

City Fuel purchased a "Broadened Coverage Endorsement" to cover the release of pollutants that might occur in the circumstances described in the first two of the excluded categories, i.e., while the pollutant (oil) was "[b]eing transported" in its trucks (or being loaded onto or off of them), or while it was "[o]therwise in the course of transit by" City Fuel.[2]

We turn first to the language of the indorsement, which we

---

[2]The "Pollution Liability — Broadened Coverage" indorsement provides, in relevant part:

> "With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

"1. Liability Coverage is changed as follows:

find to be dispositive. In particular, we consider the meaning of the terms "transit" and "transported." In *Koshland* v. *Columbia Ins. Co., supra,* this court was faced with determining whether an insurance policy that insured a merchant against the loss of his wool while "actually in transit" or in the course of "transportation" covered a loss caused by the flooding of a warehouse where the wool had remained for eight months waiting to be processed before being shipped from the west coast to Boston. In its decision, the court noted that the "natural meaning of the words 'transit' and 'transportation' as applied to wool

"Except for liability assumed under a contract or agreement, this insurance also applies to —

" 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants':

"a. That are, or that are contained in any property that is:

"(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered 'auto';

"(2) Otherwise in the course of transit by or on behalf of the 'insured.'

"2. Definitions

"As used in this endorsement:

"D. 'Covered pollution cost or expense' arising out of:

"1. Any request, demand or order; or

"2. Any claim or 'suit' by or on behalf of a governmental authority demanding that the 'insured' or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants.'

" 'Covered pollution cost or expense' does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants':

"a. That are, or that are contained in any property that is being stored, disposed of, treated or processed in or upon 'the covered auto'; or

"b. Before the 'pollutants' or any property in which the 'pollutants' are contained are moved from the place where they are accepted by the 'insured' for movement into or onto the covered 'auto'; or

"c. After the 'pollutants' or any property in which the 'pollutants' are contained are moved from the covered 'auto' to the place where they are finally delivered, disposed of or abandoned by the 'insured.' "

is that it shall be in the course of movement by some kind of carriage from one place to another," *id.* at 472, and that "[t]ransportation implies the taking up of persons or property at some point and putting them down at another." *Id.*, quoting *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U.S. 196, 203 (1885). The court also noted that "delays commonly incident to a movement of merchandise . . . would not ordinarily be thought to suspend transportation or transit." *Koshland* v. *Columbia Ins. Co.*, *supra* at 472-473. Although the court went on to discuss how the terms "transit" and "transportation" had been broadened beyond their "natural meaning" in various contexts involving the shipment of goods,[3] it concluded that it need not consider those broadened definitions because the policy's inclusion of the wording "actually in transit" conveyed the "natural" significance of the word "transit." *Id.* at 476. The court therefore found that the policy only insured the wool while in "physical portage," not while awaiting processing before commencing such portage, but that the wool would "of course be protected under the policy during . . . ordinary delays and transshipments incident to such movement." *Id.*

Consistent with this analysis, and in the context of the policy before us, we conclude that the oil was "in the course of transit," within the meaning of the indorsement, once it had been picked up for delivery and had begun to travel to its destination, and that it remained in transit until it was delivered to City Fuel's customers, even though there may have been ordinary delays and stoppages along the way. The fact that the trucks into which the oil was loaded normally traveled only during business hours, or might stop for periods of time during those hours to make other deliveries or to provide relief to the drivers, does not alter the status of the oil as being "in the course of transit."[4]

This interpretation of the indorsement is consistent with what

---

[3]For example, the *Koshland* court cited the United States Supreme Court's decision in *The Bermuda*, 70 U.S. (3 Wall.) 514, 553 (1865), for the proposition that with respect to the shipping of contraband, "[a] transportation from one point to another remains continuous, so long as intent remains unchanged, no matter what stoppages or transshipments intervene." *Koshland* v. *Columbia Ins. Co.*, 237 Mass. 467, 473 (1921).

[4]It is of no consequence that the vehicle stops every night at the same place

an "objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 283 (1997), quoting *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993). As noted above, City Fuel is in the business of delivering oil to residential customers. In purchasing an indorsement that covers the oil it delivers *both* while it is "[b]eing transported" and, more broadly, while it is "[o]therwise in the course of transit by" the insured, an objective purchaser in City Fuel's position would reasonably believe that a release of the oil would be covered from the time the oil is loaded onto its trucks until the time it is delivered to the customer, at least in the ordinary course.

This interpretation of the policy is also consistent with the strict construction we normally afford exclusionary clauses, particularly where there is any ambiguity. In the context of the trade or course of the delivery business being insured, and in light of the wording of the indorsement discussed above, it would be unreasonable to interpret the words "[b]eing stored," as used in the exclusion clause of the policy, to apply to those periods when the truck transporting the oil was parked, and interpreting the indorsement language to apply only when the truck was moving. We decline to do so, and order the entry of summary judgment for City Fuel on its claim for declaratory relief.[5]

We do, however, affirm the judge's decision granting sum-

between deliveries rather than at a truck stop somewhere between the point of pickup and the point of delivery.

[5]National Fire relies on J.E. Meintzer & Sons *vs.* Nationwide Mut. Ins., Civ. A. No. HAR91-353 (D. Md. Jan. 14, 1992). This reliance is misplaced. City Fuel purchased broadened coverage under the "Pollution Liability — Broadened Coverage for Covered Autos — Business Auto and Truckers Forms — Massachusetts" indorsement. The insurance policy at issue in the Meintzer case contained a pollution exclusion, but no indorsement. The Meintzer case focuses on an exception to the exclusion having nothing to do with the interpretation of the terms "[o]therwise in the course of transit" or "[b]eing transported," which is dispositive in this case. Additionally, "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer.' . . . Instead, Maryland takes the view that insurance policies are to be construed like other contracts in order to determine the parties' intentions." Liberty Mut. Ins. Co. *vs.* Black & Decker Corp., Civ. A. No. 04-10654 (D. Mass. Jan. 13, 2005), quoting

mary judgment on the G. L. c. 93A claim to National Fire. That claim fails because the interpretation of the policy's language is an issue of first impression, and we find that National Fire's position was reasonable. See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 763 (1993) (even if coverage found to exist, insurer not liable under G. L. c. 93A if its position was reasonable, particularly where little or no legal precedent exists on the issue).[6] The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

*Cheney* v. *Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766-767 (1989). Massachusetts construes insurance policies against the insurer in the case of an ambiguity.

[6] In light of our disposition of the case based on an interpretation of indorsement language, we do not reach the question of the applicability of the federally mandated "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carriers Act of 1980."