# United States Court of Appeals
## For the First Circuit

No. 21-1202

LEGAL SEA FOODS, LLC,

Plaintiff, Appellant,

v.

STRATHMORE INSURANCE CO.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Barron, Chief Judge,
Howard, Circuit Judge,
and Singal, District Judge.[*]

  Michael S. Levine, with whom Christopher M. Pardo, Nicholas D. Stellakis, Harry L. Manion III, and Hunton Andrews Kurth LLP were on brief, for appellant.
  Gregory P. Varga, with whom Jonathan E. Small, Linda L. Morkan, and Robinson & Cole LLP were on brief, for appellee.
  John N. Ellison, Luke E. Debevec, and Reed Smith LLP on brief for amicus curiae United Policyholders.
  Wm. Gerald McElroy, Jr. and Zelle LLP on brief for amici curiae American Property Casualty Insurance Association and National Association of Mutual Insurance Companies.

---

[*] Of the District of Maine, sitting by designation.

June 3, 2022

BARRON, **Chief Judge**.  This appeal concerns a suit that Legal Sea Foods ("Legal") brought under Massachusetts law against Strathmore Insurance Co. ("Strathmore") following Strathmore's denial of Legal's request for coverage for losses that it claimed to have suffered during the COVID-19 pandemic.  Legal filed the suit in the United States District Court for the District of Massachusetts.  The District Court granted Strathmore's motion to dismiss Legal's claims under Federal Rule of Civil Procedure 12(b)(6).  After we heard argument in this case, the Massachusetts Supreme Judicial Court (the "SJC") decided Verveine Corp. v. Strathmore Insurance Co., 184 N.E.3d 1266 (Mass. 2022), which addressed similar claims to those that Legal brings.  Based on the reasoning in Verveine, we affirm.

## I.

We draw the facts from the operative complaint, accepting them as true for purposes of reviewing the District Court's dismissal of the complaint under Rule 12(b)(6).  Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018).  Legal owns and operates thirty-four seafood restaurants in five states and the District of Columbia.  It purchased a commercial property insurance policy from Strathmore effective March 1, 2020 to March 1, 2021 (the "Policy").

Strathmore labeled the Policy "Protecto-Guard" and marketed it as an "enhanced property coverage endorsement for

- 3 -

restaurants."  The Policy includes three types of coverage that this appeal implicates.

The first type is "Building and Personal Property Coverage."  Strathmore "will pay" under this type of coverage "for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  The Policy defines "Covered Property" to include, in relevant part, the buildings housing Legal's restaurants and permanently installed machinery and equipment.  It defines "Covered Cause of Loss" to mean "Risks of Direct Physical Loss."

The second type is "Business Income Coverage."  Strathmore "will pay" under this type of coverage "for the actual loss of Business Income [Legal] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration,'" provided that the "suspension" is "caused by direct physical loss of or damage to property."  The Policy defines "operations" to mean "business activities occurring at the described premises."  It defines the "period of restoration" to begin 24 hours "after the time of direct physical loss or damage for Business Income Coverage" and last until "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or . . . when business is resumed at a new permanent location."

- 4 -

The third type is "Extra Expense Coverage." Such coverage is provided only if Legal is entitled to "Business Income Coverage" for that restaurant. Like the first two types of coverage, this type kicks in only if Legal suffers "direct physical loss or damage to property."

The Policy also provides a fourth type of coverage -- "Civil Authority Coverage" -- that is not at issue on appeal. To be eligible for "Civil Authority Coverage," Legal would need to show, among other requirements, that "a Covered Cause of Loss cause[d] damage to property other than property at" Legal's restaurants, and that "[a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property."

The Policy includes two relevant exclusions. Under the "Ordinance or Law" exclusion, Strathmore "will not pay for any loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property." Under the "Acts or [D]ecisions" exclusion, Strathmore "will not pay for loss or damages caused by or resulting from . . . [a]cts or decisions, including the failure to act or decide, of any person, group, organization, or governmental body," unless those acts or

decisions "result[] in a Covered Cause of Loss," in which case Strathmore "will pay for the loss or damage caused by that Covered Cause of Loss."

The Policy does not expressly exclude or limit losses caused by viruses or pandemics. Nor does it include a typical "Virus Exclusion," a stock policy provision for which Strathmore's parent company had previously sought regulatory approval in New York to use in certain policies.[1]

On March 11, 2020, the World Health Organization declared that the global outbreak of COVID-19 was a pandemic. The first case of COVID-19 among Legal's employees and guests of which Legal is aware developed that same day.

The mechanisms of transmission of the virus that causes COVID-19, SARS-CoV-2 -- respiratory droplets from infected individuals that "attach to surfaces" or "carry through" and "linger in the air" -- made the virus "ubiquitous on surfaces and in the air." That virus also "attach[ed] to surfaces on and within . . . insured property and [hung] in the air."

_____

[1] That parent company, in its regulatory filings, had expressed that the application of the exclusion would be to "some isolated risks," and anticipated that "exposure [to these risks] is minimal." It saw the Virus Exclusion as "appropriate on occasion," and only for restaurants where "the risk presented with claim history indicative of recent incident and loss control with little remediation," accompanied by "concerns of an on-going nature (cavalier attitude of management regarding implementation of hand washing procedures by food handling staff)."

- 6 -

Between March 13 and March 24, the governors of the five states where Legal owns and operates restaurants and the mayor of the District of Columbia each ordered in response to the pandemic the suspension of restaurant table service, restricting restaurant operations to take-out and delivery only. These and subsequent orders required Legal either to close its dining rooms or impose atypically strict capacity limits. They also required Legal to install protective barriers and partitions before reopening.

Following the discovery of COVID-19 cases at Legal's restaurants and the issuance of the orders, Legal submitted a claim under the Policy to Strathmore for coverage for alleged losses. After a phone call with Legal, Strathmore denied the claim, apparently without further investigation. Strathmore concluded that Legal had not shown that it had suffered "direct physical loss of or damage to property," which each of the types of coverage discussed above required it to show. Strathmore also cited the "acts or decisions" exclusion in the Policy.

Strathmore thereafter denied by letter Legal's request to reconsider the denial of coverage. The letter both restated Strathmore's earlier reasons for the denial and cited the "ordinance or law" exclusion as an additional ground for denying Legal's claim for coverage.

Legal filed suit in the District Court against Strathmore on May 4, 2020. Legal ultimately filed, with leave

from the District Court and over Strathmore's objection, its Second Amended Complaint. The Second Amended Complaint, which is the operative complaint, asserts two breach of contract counts: Count I, which is based on Strathmore's failure to cover Legal's losses under the Policy's Business Interruption and Extra Expense Coverages, and Count II, which is based on Strathmore's failure to compensate Legal's losses under the Policy's Civil Authority Coverage. Count III asserts a claim under Chapter 93A of the Massachusetts General Laws based on Strathmore's alleged "unfair or deceptive acts and practices." Count IV asserts one declaratory judgment count seeking a declaration that "[t]he Policy covers [Legal]'s claim; and [n]o Policy exclusion applies to bar or limit coverage" for that claim.

The District Court granted Strathmore's motion to dismiss all of Legal's claims under Fed. R. Civ. P. 12(b)(6). Legal Sea Foods, LLC v. Strathmore Ins. Co., 523 F. Supp. 3d 147, 155 (D. Mass. 2021). As to Count I, it held that Legal was not entitled to payment under the Business Income and Extra Expense Coverages because it did not plausibly allege that its losses resulted from the presence of SARS-CoV-2 at its restaurants and because the phrase "direct physical loss" for these types of coverage in the Policy "requires some kind of tangible, material loss" under Massachusetts law. Id. at 151-52. Because the "virus does not impact the structural integrity of property in the manner

- 8 -

contemplated by the Policy," the District Court determined, the presence of the virus could not "constitute 'direct physical loss of or damage to' property." Id. at 152. The District Court noted that several courts across the country had reached a similar conclusion in similar cases and found that many of the decisions Legal put forward in support of its claims "ha[d] subsequently been distinguished or refuted" or had been "found . . . to be outliers." Id. at 152-53. The District Court also deemed "unavailing" Legal's argument that the lack of a Virus Exclusion in the Policy showed that the Policy was meant to cover pandemic-related losses. Id. at 153.

The District Court turned to Count II, which concerned the Civil Authority Coverage. The District Court ruled that Legal "fail[ed] to identify any specific [o]rder that expressly and completely prohibited access to any" of Legal's restaurants. Id. at 154. To the contrary, the District Court explained, Legal acknowledged that takeout and delivery operations were permissible in each jurisdiction. Id. Because the District Court determined that a complete prohibition on access was a prerequisite to Civil Authority Coverage, it concluded that Count II had to be dismissed, regardless of whether takeout and delivery service would have been economically feasible for Legal. Id.

The District Court dismissed Count III, Legal's Chapter 93A claim, on the ground that an insurer does not violate the

Chapter "so long as [it] made a good faith determination to deny coverage." Id. (alteration in original) (quoting Ora Catering, Inc. v. Northland Ins. Co., 57 F. Supp. 3d 102, 110-11 (D. Mass. 2014)). It dismissed Count IV, the declaratory judgment claim, because it concluded that Legal had "failed to plead facts sufficient to demonstrate that it is entitled to coverage under the Policy." Id. at 154-55.

Legal timely appealed.

## II.

Legal argues on appeal only that the District Court erred by granting the motion to dismiss with respect to Count I, which concerns the Business Income and Extra Expense Coverages, and Count III, which concerns Chapter 93A, as well as Count IV insofar as it concerns the claims in Counts I and III. Legal makes no argument as to the dismissal of its claim for Civil Authority Coverage in Count II. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

## A.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" with "enough factual detail to make the asserted claim 'plausible on its face.'" Cardigan Mtn. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)

and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). We credit neither "conclusory legal allegations," id. (quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)), nor factual allegations that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

In reviewing the grant of a motion to dismiss for failure to state a claim, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the [plaintiff]'s favor." Alston v. Spiegel, 988 F.3d 564, 571 (1st Cir. 2021) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). Our review is de novo. Id.

We apply Massachusetts law to interpret the Policy. Fidelity Co-op. Bank v. Nova Cas. Co., 726 F.3d 31, 36 (1st Cir. 2013). Under Massachusetts law, we must

> construe[] the terms of the policy "de novo under the general rules of contract interpretation." Valley Forge Ins. Co. v. Field, 670 F.3d 93, 97 (1st Cir. 2012) (quoting Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000)) (internal quotation marks omitted). First, we look to "the actual language of the policies, given its plain and ordinary meaning." Id. The burden of demonstrating that an exclusion exists that precludes coverage is on the insurer, and "any ambiguities in the exclusion provision are strictly construed against [said] insurer." Id. Where "the relevant policy provisions are

- 11 -

> plainly expressed, those provisions must be enforced according to their terms and interpreted in a manner consistent with what an objectively reasonable insured would expect to be covered." <u>Vicor Corp.</u> v. <u>Vigilant Ins. Co.</u>, 674 F.3d 1, 11 (1st Cir. 2012) (citing <u>City Fuel Corp.</u> v. <u>Nat'l Fire Ins. Co. of Hartford</u>, 446 Mass. 638, 846 N.E.2d 775, 778-79 (Mass. 2006)).

<u>Id.</u> at 36-37 (alterations in original).

**B.**

Legal contends that it plausibly alleges in Count I that it suffered "direct physical loss of or damage to covered property" based on the physical presence of the virus in its restaurants. We cannot agree in light of <u>Verveine</u>.

There, the owners of three restaurants challenged the denial of their claims for coverage under their property insurance policies for losses that the restauranteurs claimed that they suffered during the COVID-19 pandemic. 184 N.E.3d at 1269-70. Their claim depended on their showing that they had suffered what under the policies there at issue would be "direct physical loss of or damage to" property. <u>Id.</u> at 1269. The SJC held that the complaint had been properly dismissed under Massachusetts's equivalent to Rule 12(b)(6). <u>Id.</u> at 1270.

In so ruling, the SJC "conclude[d] that 'direct physical loss of or damage to' property requires some 'distinct, demonstrable, physical alteration of the property.'" <u>Id.</u> at 1275 (quoting 10A Steven Plitt et al., <u>Couch on Insurance</u> § 148:46 (3d

- 12 -

ed. 2016)). It further explained that "property has not experienced physical loss or damage in the first place unless there needs to be active repair or remediation measures to correct the claimed damage or the business must move to a new location." Id. (citing Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327, 333 (7th Cir. 2021)). And, finally, the SJC concluded that "[w]hile saturation, ingraining, or infiltration of a substance into the materials of a building or persistent pollution of a premises requiring active remediation efforts is sufficient to constitute 'direct physical loss of or damage to property,'" "[e]vanescent presence of a harmful airborne substance that will quickly dissipate on its own, or surface-level contamination that can be removed by simple cleaning, does not physically alter or affect property," and, thus, "is not" likewise sufficient. Id. at 1276 (citing Kim-Chee LLC v. Phila. Indem. Ins. Co., 535 F. Supp. 3d 152, 160-61 (W.D.N.Y. 2021), aff'd, No. 21-1082 (2d Cir. Jan 28, 2022)).

Based on this interpretation of what constituted "direct physical loss or damage to" property under the plaintiffs' policies, the SJC determined that "the suspension of business at the [plaintiffs'] restaurants was not in any way attributable to a direct physical effect on the plaintiffs' property that can be described as loss or damage." Id. The SJC pointed to "the restaurants' continuing ability to provide takeout and other

- 13 -

services" and the fact that the virus "will quickly dissipate on its own" or "be removed by simple cleaning." Id. In this way, the SJC made clear that it regarded the plaintiffs as having plausibly alleged that the virus had merely an "evanescent presence" or caused "surface-level contamination that can be removed by simple cleaning." Id.

We see no grounds on which Verveine may be distinguished from this case. True, Verveine did not adopt the "structural integrity" requirement on which the District Court partially relied. But, we may affirm the District Court on any ground manifest in the record, MacDonald v. Town of Eastham, 745 F.3d 8, 11 (1st Cir. 2014), and Verveine did clearly hold that an allegation of only the "evanescent presence" of the virus or a type of presence that could be addressed through simple cleaning requires the legal conclusion that there was no "direct physical loss of or damage to" property under the policies at issue in that case, 184 N.E.3d at 1276. That same legal conclusion is equally applicable here, given that we confront identical policy language in the relevant respect and that the factual allegations in Legal's operative complaint allege no more than a presence of the virus that is evanescent or that results in contamination of surfaces that may be addressed through simple cleaning.

Legal does attempt to distinguish Verveine by arguing that the complaint in that case alleged only losses due to

governmental closure orders and so did not allege the virus was present as the basis for concluding the plaintiffs had suffered direct physical loss of or damage to property. By contrast, Legal's complaint alleges both losses attributable to governmental closure orders and losses due to the actual presence of the SARS-CoV-2 virus at Legal's restaurants. But, Verveine expressly states that an allegation that the virus was "present" at the plaintiffs' restaurants "would not affect the outcome" of the case, id. at 1271 n.7, and explains that "mere 'presence' [of the virus] does not amount to loss or damage to the property," id. at 1276 (quoting Kim-Chee LLC, 535 F. Supp. 3d at 159), precisely because the nature of the virus's presence is evanescent and because the virus's presence may be addressed through simple cleaning.

We do note that Legal's complaint contains specific allegations regarding how long the virus persists on certain surfaces in Legal's restaurants or in the air, while the complaint in Verveine did not, see Complaint at 4, Verveine v. Strathmore Ins. Co., No. 2084CV01378, 2020 WL 11590554 (Mass. Super. Ct. Dec. 21, 2020), 2020 WL 8474771 [hereinafter Verveine Complaint]. Legal alleges that "aerosol droplets" carrying SARS-CoV-2 "can linger in the air for hours" and "can be pulled into air circulation systems and spread to other areas in a building." It further alleges that "SARS-CoV-2 can linger" on surfaces "for up to 28 days, serving as a vehicle for viral transmission during that timespan."

- 15 -

But, we do not understand the former allegation to allege more than "[e]vanescent presence of a harmful airborne substance that will quickly dissipate on its own," Verveine, 184 N.E.3d at 1276, as we do not see a reason for concluding that the SJC would view Legal's allegations concerning the virus's circulation and hours-long persistence in the air as establishing more than "[e]vanescent presence." Nor do we understand the latter allegation to plausibly allege more than "surface-level contamination that can be removed by simple cleaning," id. Even if a period of 28 days is too long to be "evanescent," Legal has not alleged the virus cannot "be removed by simple cleaning," as it alleges only that it has had to "increase frequency of cleaning" in its restaurants. Any contention that this "increase[d] frequency of cleaning" means the virus cannot "be removed by simple cleaning" because the virus is, as Legal argues, "constantly being spread and reintroduced" misinterprets Verveine, which, by invoking the phrase "simple cleaning," was referring to the intensity of remediation measures that would be required to remove a droplet. And, we note that the Verveine complaint made similar allegations. See Verveine Complaint at 4. We thus see nothing in the allegations in Legal's complaint that would provide a basis for concluding that Verveine can be distinguished from the case before us on such a basis.

Legal also argues that Verveine is distinguishable because the SJC noted there that the plaintiffs in that case alleged that they "continued to inhabit [their] property and use it for other purposes," while there are no such allegations in Legal's complaint. But, we do not think that Legal identifies a true distinction between the complaints. The plaintiffs in Verveine alleged that they could "use their properties to provide take-out and delivery services." Verveine Complaint at 6. Although Legal did not make a similar allegation, its complaint does make clear that it continued to access its properties. For example, Legal alleges it has had to "reduce" -- but not eliminate -- "operational hours," to "institute 'no contact' food hand-off procedures" but not to cease providing food entirely, and to "provide personal protective equipment to its employees," who are presumably on Legal's premises. Thus, we see no way to avoid the inference that Legal, like the Verveine plaintiffs, suffered only a "partial loss of use," Verveine, 184 N.E.3d at 1277 (quoting Sandy Point Dental P.C., 20 F.4th at 334), and thus the conclusion that Legal has not plausibly alleged that it suffered "direct physical loss of or damage to" property as Verveine construes such policy language.

Finally, Legal appeals to the canon that "[a]ny ambiguities in the language of an insurance contract . . . are interpreted against the insurer who used them and in favor of the

insured," id. at 1272 (omission in original) (quoting Dorchester Mut. Ins. Co. v. Krusell, 150 N.E.3d 731, 738 (Mass. 2020)). It argues that -- particularly in light of the absence of a "Virus Exclusion" -- that canon requires a determination that it was entitled to compensation. But, Verveine acknowledged that same canon and nonetheless reached the result that it did because it determined that there was no ambiguity as to whether the virus caused a "direct physical loss." Id. at 1272. Moreover, Verveine concluded that the absence of a Virus Exclusion could not cause rise to a "negative implication that policies that do not contain the exclusion should cover claims arising from the COVID-19 virus." Id. at 1277.

## III.

Legal also challenges the District Court's dismissal of its claim under Mass. Gen. Laws ch. 93A. The District Court dismissed that claim for the same reason that it dismissed its breach of contract claim. Legal Sea Foods, 523 F. Supp. 3d at 154. Legal argues on appeal only that the dismissal should be reversed for the same reason. So, reviewing de novo, Barchock, 886 F.3d at 48, we affirm the dismissal of the Chapter 93A claim for the same Verveine-based reasons that we affirm the dismissal of the breach of contract claim.

## IV.

**Affirmed**. The parties shall bear their own costs.