NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-407                                              Appeals Court

    75 ARLINGTON ST., INC., & others[1]  vs.  STRATHMORE INSURANCE
                              COMPANY.


                            No. 23-P-407.

        Suffolk.      January 17, 2024. – May 20, 2024.

            Present:  Meade, Blake, & Desmond, JJ.



Insurance, Business owner's policy, "All risk" policy, Property
     damage, Coverage.  Contract, Insurance.  Practice, Civil,
     Motion to dismiss.  Words, "Direct physical loss of or
     damage to."




     Civil action commenced in the Superior Court Department on
March 11, 2022.

     A motion to dismiss was heard by Kenneth W. Salinger, J.


     Michael S. Levine (Nicholas D. Stellakis also present) for
the plaintiffs.
     Gregory P. Varga (Jonathan E. Small also present) for the
defendant.
     Catherine R. Castaldo, for United Policyholders, amicus
curiae, submitted a brief.

---

     [1] 202 Washington St., Inc.; 111 South 17th Street, Inc.; One
Patriot Place LLC; 443 Lexington Avenue, Inc.; 427 Walnut St.,
LLC; 201 Main Street LLC; 151 Granite Street LLC; and 51 Liberty
Drive, LLC.

MEADE, J.  The plaintiffs are a group of restaurant owners that filed a claim with their insurance company, defendant Strathmore Insurance Company (Strathmore), for the loss of business income sustained during the COVID-19 pandemic. Strathmore denied the claim on the basis that the loss of business income was not "caused by direct physical loss of or damage to property," as required under the plaintiffs' policy. The plaintiffs filed suit, Strathmore moved to dismiss, and a Superior Court judge allowed the motion.  The plaintiffs appeal from the judgment of dismissal.[2]  Discerning no reason to distinguish this case from Verveine Corp. v. Strathmore Ins. Co., 489 Mass. 534 (2022) (Verveine), we affirm.

Background.  We recite the facts as alleged in the plaintiffs' first amended complaint but disregard legal conclusions cast in the form of factual allegations.  See Moran v. Benson, 100 Mass. App. Ct. 744, 745 (2022).  See also Skiffington v. Liberty Mut. Ins. Co., 93 Mass. App. Ct. 1, 2 (2018).

The plaintiffs had an insurance policy with Strathmore that insured against "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  The premises

_____

[2] We acknowledge the amicus brief submitted by United Policyholders.

described in the declarations included the plaintiffs' headquarters and restaurant locations. "Covered Property" included the "building or structure described in the Declarations" and personal property "located in or on the building . . . or in the open (or in a vehicle) within [one hundred] feet of the described premises," subject to certain exclusions. A "Business Income (and Extra Expense) Coverage Form" included the following provisions pertaining to the loss of business income:

> "We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at premises which are described in the Declarations . . . . The loss or damage must be caused by or result from a Covered Cause of Loss."

During the policy's term, the COVID-19 pandemic swept the globe, and the virus became physically present at the plaintiffs' restaurants. As alleged, infected individuals shed the virus "through normal breathing, talking, and other ways, into the indoor air and onto surfaces throughout the restaurants." Once shed, infectious virus particles "settle[d] on surfaces, adhering through gravitational and electrostatic forces." The presence of the virus caused the plaintiffs to take "extraordinary measures," which included "closing certain operations and services, substantially modifying others, restricting access to many of the properties, enforcing physical

distancing, and undertaking extensive active efforts to repair, restore, and remediate the facilities."  "Some surfaces and objects retain[ed] residual infectious virus even after cleaning, and no amount of cleaning [could] prevent aerosolized infectious particles from attaching to surfaces after cleaning." However, the plaintiffs were able to continue operating "at reduced levels" during the COVID-19 pandemic.

Discussion.[3]  The Supreme Judicial Court's decision in Verveine, 489 Mass. at 536-537, 540, involves similar facts and policies.  Another group of restaurant owners filed claims with the same insurance company, Strathmore, for the loss of business income sustained during the COVID-19 pandemic.  See id. at 537. The restaurant owners had two policies with Strathmore, see id. at 536, one of which was the same as the plaintiffs' policy in all material respects, see id. at 540.  The other policy contained a virus exclusion that was not part of the plaintiffs' policy.[4]  See id at 536.  However, the Verveine decision does not turn on the virus exclusion.  Rather, the Supreme Judicial Court addressed the same language at issue in this case -- whether

_____

[3] Our review of the allowance of the motion to dismiss is de novo.  See Verveine, 489 Mass. at 538.

[4] The virus exclusion applied to "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Verveine, 489 Mass. at 536.

there was any "direct physical loss of or damage to" property -- and concluded that (1) those words require a physical alteration of the property and (2) the COVID-19 virus did not physically alter or affect any of the insured property.  Id. at 542-543.[5]

In this appeal, the plaintiffs' sole argument is that they, unlike the restaurant owners in Verveine, alleged facts showing how the COVID-19 virus physically altered or affected their insured property.  Specifically, the plaintiffs argue that the restaurant owners in Verveine had to plead around the virus exclusion and "scrupulously avoided pleading any fact or detail describing how the virus had any distinct, demonstrable, physical effect on their property at all."  In other words, the plaintiffs argue that Verveine is a "product of the record" and should be distinguished on that basis.  This argument reads Verveine too narrowly.

As noted, Verveine holds that "'direct physical loss of or damage to' property requires some 'distinct, demonstrable, physical alteration of the property.'"  Verveine, 489 Mass. at

_____

[5] The Supreme Judicial Court noted that it did not need to reach Strathmore's arguments regarding the virus exclusion given that "coverage did not attach in the first place," but briefly addressed the exclusion, "not for whether it would exclude coverage, but whether, as the [restaurant owners] claim[ed], it creates a clear negative implication that policies that do not contain the exclusion should cover claims arising from the COVID-19 virus."  Verveine, 489 Mass. at 545-546.  The Supreme Judicial Court "conclude[d] that no such negative implication [could] or should be drawn."  Id. at 546.

542, quoting 10A S. Plitt, D. Maldonado, J.D. Rogers, & J.R. Plitt, Couch on Insurance 3d § 148:46 (rev. ed. 2016). On the question of what constitutes a physical alteration of property, Verveine provides the following guidance. "[P]roperty has not experienced physical loss or damage in the first place unless there needs to be active repair or remediation measures to correct the claimed damage or the business must move to a new location." Verveine, supra at 543. Thus, the "[e]vanescent presence of a harmful airborne substance that will quickly dissipate on its own, or surface-level contamination that can be removed by simple cleaning, does not physically alter or affect property." Id. at 544. In contrast, the "saturation, ingraining, or infiltration of a substance into the materials of a building or persistent pollution of a premises requiring active remediation efforts" does constitute a physical alteration. Id.

Similar distinctions have been made in cases across the country. See Kim-Chee LLC v. Philadelphia Indem. Ins. Co., 535 F. Supp. 3d 152, 161 (W.D.N.Y. 2021), aff'd, U.S. Ct. App., No. 21-1082-cv (2d Cir. Jan. 28, 2022). Courts have ruled that "contamination that is temporary . . . or that imposes remediation costs without preventing use of the building . . . is unlikely to qualify as a direct physical loss [or damage] to the insured premises." Id. Courts also have ruled "that

contamination by a persistent chemical or biological agent, not otherwise excluded from coverage, may cause . . . direct physical loss [or damage] if it renders the insured property unusable." Id. Examples of persistent chemical or biological agents include ammonia, gasoline, and the persistent odor from methamphetamine production. See Verveine, 489 Mass. at 544.

In Verveine, the Supreme Judicial Court applied these principles to the COVID-19 virus. The court assumed that the virus was physically present in the restaurants but explained,

> "[T]he suspension of business at the restaurants was not in any way attributable to a direct physical effect on the plaintiffs' property that can be described as loss or damage. As demonstrated by the restaurants' continuing ability to provide takeout and other services, there were not physical effects on the property itself."

Verveine, 489 Mass. at 543.

The overwhelming majority of courts that have addressed insurance claims for pandemic-related loss of business income have reached the same conclusion. See Lawrence Gen. Hosp. v. Continental Cas. Co., 90 F.4th 593, 603 (1st Cir. 2024). As one court phrased it, the presence of the COVID-19 virus "does not give rise to the necessary transformative element of something like fire, water, or smoke" (quotation and citation omitted). Starr Surplus Lines Ins. Co. v. Eighth Judicial Dist. Court of the State of Nev., in & for the County of Clark, 535 P.3d 254, 264 (Nev. 2023).

Courts have reached the same conclusion even when presented with detailed allegations regarding how the COVID-19 virus affects the air and surfaces around it.  See, e.g., Lawrence Gen. Hosp., 90 F.4th at 600-602, citing Legal Sea Foods, LLC v. Strathmore Ins. Co., 36 F.4th 29 (1st Cir. 2022), and SAS Int'l, Ltd. v. General Star Indem. Co., 36 F.4th 23 (1st Cir. 2022).  See also Consolidated Restaurant Operations, Inc. v. Westport Ins. Corp., ___ N.Y.3d ___ (N.Y. Feb. 15, 2024).  For example, some policyholders have alleged that aerosol droplets containing the virus can linger in the air for hours and that virus particles, once on surfaces, can remain there for up to twenty-eight days.  See Legal Sea Foods, LLC, supra at 35; SAS Int'l, Ltd., supra at 27.  Other policyholders have alleged that the virus bonds to surfaces through a process called "adsorption."  Lawrence Gen. Hosp., supra at 596.  However, these allegations do not show the sort of physical alteration required to establish coverage.  See Verveine, 489 Mass. at 542.

The plaintiffs' factual allegations in this case do not compel a different conclusion.  The plaintiffs alleged that virus particles settled on the plaintiffs' property; the plaintiffs had to take "extraordinary measures," including cleaning their property, to combat the virus; and that some virus particles remained even after cleaning.  However, the plaintiffs also alleged that, through cleaning and other

measures, the plaintiffs' restaurants remained in use throughout the pandemic.  The plaintiffs specifically alleged, "[T]here have been hundreds (if not thousands) of infected guests on-site since the pandemic's outset."  These allegations do not show that the virus physically altered or affected the insured property in any way.  Rather, they show the "[e]vanescent presence of a harmful airborne substance," Verveine, 489 Mass. at 544, and that there was no direct physical loss or damage to property.[6]  Accordingly, the judgment of dismissal is affirmed.

So ordered.

---

[6] We note that the plaintiffs also alleged that the COVID-19 virus "physically and tangibly change[d], alter[ed], and transform[ed] the content of the indoor air and the composition of the surfaces throughout the buildings and structures at the restaurants."  This, however, is a legal conclusion cast as a factual allegation, and we therefore do not accept it as true. See Moran, 100 Mass. App. Ct. at 745.